Present: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

CLEAN SWEEP PROFESSIONAL PARKING
LOT MAINTENANCE, INC., ET AL.

OPINION BY
v. Record No. 030058          JUSTICE DONALD W. LEMONS
                              January 16, 2004

FRANK TALLEY, SR.

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

In this appeal, we consider whether the trial court erred in overruling pleas in bar based upon the exclusivity provisions of the Virginia Workers' Compensation Act, Code § 65.2-100 et seq. ("the Act").

I.    Facts and Proceedings Below

In August 1997, Virginia Paving Company ("Virginia Paving") was engaged in the repaving of certain portions of Interstate Highway 95 in Spotsylvania County, under a contract from the Virginia Department of Transportation ("VDOT"). The contract required Virginia Paving to undertake all aspects of the repaving process including milling the existing road surface, removing the milled asphalt, sweeping away loose debris, and repaving the roadway with fresh asphalt supplied by Virginia Paving.

Because of the size of the project, in addition to utilizing its own equipment and workforce, Virginia Paving hired subcontractors to assist in certain portions of the

work.  Virginia Paving hired J. E. Coleman Trucking Company ("Coleman Trucking") to assist Virginia Paving in transporting asphalt from Virginia Paving's plant to the jobsite, loading asphalt into the paving machines, and hauling the millings from the jobsite back to the plant.  Virginia Paving also hired Clean Sweep Professional Parking Lot Maintenance, Inc. ("Clean Sweep") to help Virginia Paving clear the roadway of asphalt after it was loosened by the milling machines.

On August 27, 1997, Frank Talley, Sr. ("Talley"), a truck driver employed by Coleman Trucking, loaded fresh asphalt at the Virginia Paving plant, delivered it to the jobsite, dumped the asphalt into the paving machine, and reloaded the truck with asphalt millings.  Before returning to the Virginia Paving plant, Talley responded to a call to diagnose a disabled Coleman truck that was also at the site.  While Talley was underneath the truck, it was struck by one of Clean Sweep's sweeper trucks operated by John J. O'Connor ("O'Connor").  As a result of the accident, Talley sustained back injuries.

Talley sued Clean Sweep and O'Connor, alleging that Talley was injured by O'Connor's negligence and recklessness in operating the sweeper truck.  Clean Sweep and O'Connor filed pleas in bar stating that the Act is Talley's sole avenue for recovery and precludes any and all other remedies.

2

The trial court overruled the pleas in bar.  The jury subsequently returned a verdict in favor of Talley in the amount of $900,000.  Clean Sweep and O'Connor appeal the trial court's judgment refusing to sustain the pleas in bar.

## II.  Analysis

On appeal, Clean Sweep and O'Connor maintain that the trial court erred by failing to sustain the pleas in bar. They assert that Coleman Trucking and Clean Sweep were both subcontractors of Virginia Paving and they were engaged in the trade, business, or occupation of Virginia Paving.  Further, they maintain that because Coleman Trucking's employee, Talley, was injured by the actions of Clean Sweep's employee, O'Connor, Talley's exclusive remedy is provided by the Act.

Whether a person is subject to the exclusivity provision of the Act presents a mixed question of law and fact that must be resolved in light of the facts and circumstances of each case.  Burch v. Hechinger Co., 264 Va. 165, 169, 563 S.E.2d 745, 747 (2002).  We review de novo the trial court's determination that Talley and O'Connor were not statutory fellow employees.

The rights and remedies provided in the Act are exclusive of all other rights and remedies of an employee or his estate at common law or otherwise.  Peck v. Safway Steel Prods., Inc., 262 Va. 522, 525, 551 S.E.2d 328, 329 (2001).  The only

exception to this exclusivity provision is provided in Code § 65.2-309(A) permitting an action to be maintained against an "other party." "[T]o be an 'other party,' a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured." 262 Va. at 525, 551 S.E.2d at 329. Additionally, we have held:

> [B]ecause he is not a "stranger to the employment," an allegedly negligent employee of one contractor, engaged in the same business or project of an owner as an injured employee of another contractor, is not an "other party" amenable to suit . . .

Evans v. Hook, 239 Va. 127, 131, 387 S.E.2d 777, 779 (1990). See also Pfeifer v. Krauss Construction Co., 262 Va. 262, 266-67, 546 S.E.2d 717, 719 (2001).

Talley does not argue that O'Connor was not a statutory employee of the general contractor, Virginia Paving. On appeal, Talley maintains that Talley's actions on behalf of his employer, Coleman Trucking, were not in the trade, business, or occupation of Virginia Paving.

The trial court held that Coleman Trucking was engaged in "a function which was solely as a supplier or deliverer of goods and, of course, to haul off goods." Citing Burroughs v. Walmont, 210 Va. 98, 168 S.E.2d 107 (1969), the trial court concluded that Coleman Trucking's work consisted of mere delivery and hauling and as such, Coleman Trucking was not

4

engaged in the trade, business or occupation of Virginia Paving. Consequently, Talley was not a statutory employee of Virginia Paving and could not be a statutory fellow employee of O'Connor. We disagree.

In Burroughs, the plaintiff, an employee of a trucking company, was injured while carrying plasterboard into one of several houses being constructed by the general contractor. 210 Va. at 99, 168 S.E.2d at 108. The trucking company had agreed to deliver and stack specified quantities of the plasterboard in the rooms in the various houses under construction. Id. at 98, 168 S.E.2d at 108. We held that "the stacking of [plasterboard] in the several rooms constituted the final act of delivery, not an act of construction." Id. at 100, 168 S.E.2d at 108. Consequently, the plaintiff was not engaged in the general contractor's trade, business, or occupation, and, therefore, the general contractor was an "other party" and subject to being sued. Id. at 100, 168 S.E.2d at 109.

Similarly, in Yancey v. JTE Constructors, Inc., 252 Va. 42, 471 S.E.2d 473 (1996), a general contractor was hired by the Virginia Department of Transportation to design and install a sound barrier along an interstate highway. Id. at 43, 471 S.E.2d at 474. The general contractor engaged a subcontractor merely to design, manufacture, and deliver

concrete wall panels to the job site.  Id.  The plaintiff, an employee of the subcontractor, was injured while he was inspecting one of the panels.  Id. at 43, 471 S.E.2d at 474. We held that the plaintiff's inspection and patching activities "were the final acts of delivery required by the contract" and that the plaintiff was not engaged in the general contractor's trade, business, or occupation.  Id. at 45, 471 S.E.2d at 475.

But not all cases that initially appear to be "delivery" cases have resulted in a holding that the plaintiff was not engaged in the trade, business or occupation of the general contractor. In Bosher v. Jamerson, 207 Va. 539, 151 S.E.2d 375 (1966), we considered a case involving an employee of a trucking company who delivered sand to a construction site but also participated in the spreading of the sand to create a foundation under the direction of the general contractor.  An employee of the general contractor was injured by negligence of the employee of the trucking company during the sand spreading process.  Id. at 540-41, 151 S.E.2d at 376.  In applying the exclusivity rule and barring the suit for personal injuries, we held that

> at the time of the accident [the driver] was performing work on behalf of his employer, [the trucking company], that was part of the trade, business or occupation of [the general contractor].  If [the driver] was performing

6

such work, [the trucking company], though an independent contractor, is not an "other party" against whom [the general contractor's employee's] right of action is preserved under the Workmen's Compensation Act, and [the general contractor's employee's] right to recover for the injury is limited to the compensation provided under the Act.

Id. at 542, 151 S.E.2d at 377.  See also Floyd v. Mitchell, 203 Va. 269, 274, 123 S.E.2d 369, 372 (1962).

Smith v. Horn, 232 Va. 302, 351 S.E.2d 14 (1986), concerned a suit for personal injuries sustained in a collision of three vehicles involving employees of two subcontractors of a coal company.  One subcontractor's vehicle was delivering supplies to a mine while another subcontractor's vehicle was hauling coal from a mine to the coal company's processing plant.  Id. at 307, 351 S.E.2d at 17.  In approving the trial court's ruling sustaining the plea in bar, we held that the coal company's business

involved the mining, processing, and sale of coal from properties it owned or leased. [The subcontractors] were independent contractors engaged to mine coal on land owned or leased by [the coal company] and to transport the coal to [the coal company's] preparation plant.  Horn and Smith, as employees of these two contractors, were performing duties within this purpose – Smith hauling supplies to the Carrie mine and Horn driving a load of coal from the Potter mine to the [coal company's] plant.  As both Smith and Horn were acting within the scope of their employment and as both contractors were carrying out a part of the trade, business, or occupation of [the coal company], Smith and Horn were fellow statutory

7

employees of [the coal company] and Smith's
common-law action against Horn was barred under
[the exclusivity provision of the Act].

Id. at 307, 351 S.E.2d at 17.

In Peck, an employee of a general contractor was killed
when he fell from scaffolding on which he was working. 262
Va. at 524, 551 S.E.2d at 328. The subcontractor, Safway, was
contracted to supply and install scaffolding for the project
to repair and replace brick masonry on a 12-story building.
Id. In erecting, modifying, and dismantling the scaffolding
system, Safway provided over 5,000 man-hours of labor.
Clearly, Safway was engaged in an essential part of the work
that the general contractor was required to perform under its
contract. Id. at 528, 551 S.E.2d at 330. Accordingly, we
held that Safway was not merely engaged in a final act of
delivery, was not a stranger to the general contractor's work,
and that Safway's work was integral to the construction done
on the building. Id. We approved the trial court's
sustaining of the plea in bar.

In Burch, the plaintiff was employed as a sales
representative for a plant wholesaler. The plaintiff agreed
to be present after delivery of the plants to assist in the
display of the retailer and to answer customer's questions.
She was injured by the alleged negligence of an employee of
the retailer and subsequently sued for damages. 264 Va. at

8

167-68, 563 S.E.2d at 746.  We rejected the plaintiff's contention that she was involved in mere delivery; rather, her participation in the display of plants and providing service to the retailer's customers removed her from the category of "other person" because she was then engaged in the business, trade, or occupation of the retailer.  Id. at 170-71, 563 S.E.2d at 748.  We approved the trial court's sustaining of the plea in bar based upon the exclusivity provision of the Act.  Id. at 171, 563 S.E.2d at 748.

     The case before us is less like Burroughs and Yancey and more like Bosher, Floyd, Smith, Burch, and Peck.  Coleman Trucking was not simply delivering goods.  To the contrary, its duties extended beyond the mere delivery of fresh asphalt and were integral to the construction process.  Virginia Paving was responsible for milling the surface of the road, removing the milled asphalt, sweeping away loose debris, and repaving the roadway with fresh asphalt supplied by Virginia Paving.  Virginia Paving employed its own equipment and workforce to complete these tasks but, because of the magnitude of the project, Virginia Paving engaged subcontractors to assist in the project.  Coleman Trucking was not merely delivering its own independently manufactured parts.  Rather, it was hauling asphalt millings to Virginia Paving's plant and delivering the recycled asphalt from the

9

plant back to the road project to be used in new paving. Clearly, similar to the defendant in Peck, Coleman "was engaged in an essential part of the work that [Virginia Paving] was required to perform under its contract with [VDOT.]" See 262 Va. at 528, 551 S.E.2d at 330.

Coleman Trucking was not a stranger to the work of Virginia Paving, and its employee, Talley, was a statutory employee of Virginia Paving. There is no controversy over whether Clean Sweep was engaged in the trade, business, or occupation of Virginia Paving. Consequently, Talley and O'Connor were fellow statutory employees of Virginia Paving. Talley's suit is precluded by the exclusivity provision of the Act.

Finally, we reject Talley's claim that his investigation of a disabled truck was a "discrete activity" "far removed from the construction process Virginia Paving had contracted to perform for VDOT." We hold that the investigation of the disabled truck on the premises of the project was not "far removed" or "discrete" such that it removed Talley's activity from the trade, occupation, or business of Virginia Paving. See Burch, 264 Va. at 170-71, 563 S.E.2d at 748.

For the reasons stated, we hold that Talley and O'Connor are statutory fellow employees for purposes of the exclusivity provision of the Virginia Worker's Compensation Act.

10

Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of Clean Sweep and O'Connor sustaining the pleas in bar.

<u>Reversed and final judgment</u>.