**William G. MEREDITH, Plaintiff,**

v.

**HONEYWELL INTERNATIONAL, INC., Defendant.**

**No. CIV.A. 3:06CV148HEH.**

United States District Court, E.D. Virginia, Richmond Division.

Aug. 23, 2006.

David Lewis Epperly, Jr., Epperly, Follis & Schork, P.C., Richmond, VA, for Plaintiff.

Alexandra Brisky Cunningham, John D. Epps, Hunton & Williams LLP, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

### (Granting Defendant's Rule 12(b)(1)Motion to Dismiss)

HUDSON, District Judge.

This matter is before the Court on Defendant Honeywell International, Inc.'s ("Honeywell") Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Procedure. Both parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. Finding that no material jurisdictional facts are in dispute and for the reasons stated herein, the Court will grant Defendant's motion.

### I. Background

Plaintiff William G. Meredith ("Meredith") brought this tort action against Honeywell for alleged injuries resulting from a July 27, 2003 fall at a Honeywell facility. Meredith fell when a chair on which he was attempting to sit broke. In addition to worker's compensation benefits that Meredith obtained through his direct employer, Oakley Tank Services ("Oakley"), Meredith seeks $10,000,000 in damages from Honeywell for failure to maintain its premises in a safe condition. Honeywell filed the present Motion to Dismiss asserting that Meredith's exclusive remedy is through the Virginia Workers' Compensation Act.

At the time of the injury, Oakley employed Meredith as a tanker truck driver. Oakley had contracted with Honeywell to transport caprolactam, a chemical intermediate used in the manufacture of nylon, from a Honeywell facility located in Hopewell, Virginia ("Hopewell Plant") to another Honeywell facility located in Irmo, South Carolina ("Irmo Plant"). Pursuant to the contract, Meredith hauled caprolactam along this route—Meredith's only route during his employment with Oakley from February 2003 until the time of the injury—three or four times a week, for which Oakley paid Meredith $200 per load. The contract provided that Oakley was an "independent contractor and neither [Oakley] nor any of its employees shall be considered an employee of Honeywell." Further, the contract required Oakley to maintain worker's compensation insurance for its employees.

Honeywell—a multinational company involved in the production and manufacture of various products, chemicals, and materials—manufactured caprolactam at its Hopewell Plant. Honeywell required this caprolactam to be transported to other facilities, including the Irmo Plant, for use in the manufacture of nylon fiber. Honeywell contracted with Oakley and other companies to transport caprolactam from the Hopewell Plant to the Irmo Plant. After delivering caprolactam to the Irmo Plant, a driver would return to the Hopewell Plant, occasionally carrying a load of "wash water" from which Honeywell would recover additional caprolactam. Honeywell also directly employed its own truck drivers across the country, and in particular, to transport caprolactam from the Hopewell Plant to a Honeywell nylon fiber plant located in Chesterfield, Virginia ("Chesterfield Plant"). In July 2003, Honeywell drivers were hauling approximately twenty loads of caprolactam from the Hopewell Plant to the Chesterfield Plant daily using trucks owned by Honeywell. Honeywell, however, did not directly

employ drivers to transport caprolactam from the Hopewell Plant to the Irmo Plant or any other out-of-state facility.

Honeywell drivers and contracted drivers followed the same procedures when loading caprolactam at the Hopewell Plant. A driver would park his truck at a loading station, place his keys in a lock box to prevent an accidental drive-off during loading, and provide paperwork to a Honeywell control operator located in a control room. The driver could then wait in the control room while the control operator loaded the truck with caprolactam. Upon loading the truck and providing the driver with completed documentation, the control operator would unlock the lock box, allowing the driver to take back his keys and drive his truck out of the plant. The total loading time takes approximately 25 minutes.

On July 27, 2003, Meredith followed these procedures, parking his truck in the loading bay, locking his keys in the lock box, and proceeding to the control room to provide the control operator with the paperwork. After presenting his paperwork to the control operator, Meredith attempted to sit in a chair in the control room and fell when the chair allegedly collapsed beneath him. Meredith did not immediately experience any pain and was able to drive his truck out of the plant to get weighed. After the weighing, Meredith returned to the Hopewell Plant to present his final weight documentation and obtain final approval to leave the Hopewell Plant. Upon his return, Meredith began experiencing back pain, and Honeywell's emergency medical personnel transported him to the hospital. Although the hospital released Meredith the same day, Meredith has had multiple surgical procedures and has not worked since the accident.

On July 25, 2005, Meredith filed an action against Honeywell in the Circuit Court for the City of Hopewell, and on February 28, 2006, Honeywell removed the action to this Court. Honeywell subsequently filed the present Motion to Dismiss, arguing that Honeywell is not liable to Meredith as a matter of law and his claims in tort are barred because, under the Virginia Workers' Compensation Act, Honeywell was a "statutory employer" of Meredith. Meredith disagrees, arguing that Honeywell was an "other party" under the Act and not his statutory employer.

## II. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction, the plaintiff in this case, has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* "[T]he nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

## III. Analysis

The Virginia Workers' Compensation Act, Code § 65.2–100 *et seq.* ("the Act") sets forth the statutory framework whereby employees may receive compensation from employers for personal injury claims arising out of and in the course of the employment. *See* Va.Code Ann. § 65.2–300. Employers' obligations extend to workers immediately employed by the employers and, in certain cases, to workers employed indirectly through subcontrac-

tors. *See* Va.Code Ann. § 65.2–302(A)–(C). Section 65.2–302(A) of the Act provides:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va.Code Ann. § 65.2–302(A).

In other words, an entity is considered to be a "statutory employer" of a worker employed by a subcontractor when the worker is performing work that is part of the entity's "trade, business or occupation." *Id.* The same provision also applies when the subcontractor in turn contracts with another subcontractor, thus making the entity a statutory employer of a worker employed by the second subcontractor. *See* Va.Code Ann. § 65.2–302(C). With few exceptions not applicable here, employers are required to compensate injured employees under the Act, notwithstanding any contract or agreement to the contrary. *See* Va.Code Ann. § 65.2–300(A).

■ The Act excludes all other rights and remedies of such employees, at common law or otherwise, on account of such injury. *See* Va.Code Ann. § 65.2–307. The Act, however, does allow an action to be maintained against an "other party." *Clean Sweep Prof'l Parking Lot Maint., Inc. v. Talley,* 267 Va. 210, 213, 591 S.E.2d 79, 81 (2004). " '[T]o be an 'other party,' a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured.' " *Id.* (alteration in original) (quoting *Peck v. Safway Steel Prods., Inc.,* 262 Va. 522, 525, 551 S.E.2d 328, 329 (2001)). The question presented here is whether Honeywell was a "statutory employer" of Meredith—thus barring Meredith's suit—or an "other party"—thus allowing Meredith's suit to proceed.

■ Honeywell takes the position that Meredith was performing an integral part of Honeywell's business, hauling a chemical intermediate manufactured by Honeywell from one Honeywell facility to another Honeywell facility where the material was used by Honeywell in the manufacture of an end product. Necessary to hauling the material was loading the truck. Meredith was injured while on Honeywell's premises during the loading of his truck. Thus, Honeywell argues, Meredith was engaging in Honeywell's trade, business, or occupation, making Honeywell a statutory employer of Meredith. The Court agrees.

Honeywell undertook to perform work that was part of its trade, business, or occupation—the manufacture of caprolactam and nylon fiber—and contracted with Oakley on a long-term basis to perform a part of that work—the transport of caprolactam, a chemical intermediate used in the manufacture of nylon, between Honeywell plants. An Oakley employee, Meredith, was injured on Honeywell's premises while Honeywell was loading his truck with caprolactam, a necessary step in the transport process. Thus, under the plain language of the Act, Honeywell was a statutory employer of Meredith during the time of his injury.

Meredith argues, however, that he was not engaged in Honeywell's trade, business, or occupation because (1) he was merely sitting in a chair at the time of the

injury, not participating in the loading process for which Honeywell maintained sole responsibility, and (2) he was engaged in interstate trucking, a job not normally done by Honeywell drivers, who only hauled caprolactam intrastate. Meredith also argues that Honeywell was not his statutory employer because the contract between Honeywell and Oakley specifically stated that Oakley employees were not to be considered employees of Honeywell and required Oakley to maintain workers' compensation insurance for its employees. These arguments are unpersuasive.

In *Clean Sweep Professional Parking Lot Maintenance, Inc. v. Talley*, 267 Va. 210, 591 S.E.2d 79 (2004), Virginia Paving Company was responsible under a contract with the Virginia Department of Transportation for all aspects of repaving a roadway, including "milling the existing road surface, removing the milled asphalt, ... and repaving the roadway with fresh asphalt." *Id.* at 212, 591 S.E.2d at 80. Virginia Paving hired a trucking company to haul asphalt between Virginia Paving's asphalt plant and the worksite and to load asphalt into a paving machine at the worksite. *Id.* A driver employed by the trucking company was injured while he was at the worksite investigating a disabled vehicle owned by the trucking company. *Id.* The Supreme Court of Virginia held that the driver was engaged in Virginia Paving's trade, business, or occupation because the trucking company was not a "stranger to the work" of Virginia Paving,

but rather was engaged in an essential part of the work that Virginia Paving was required to perform under its contract. *See id.* at 217, 591 S.E.2d at 83. The Court specifically distinguished the case from those where a trucking company was "merely delivering its own independently manufactured parts." *Id.* at 217, 591 S.E.2d at 83. The Court also rejected the driver's claim that his investigation of the vehicle was a "discrete activity" removed from the road construction process. *See id.*

Similarly, Meredith was engaged in an essential part of the work that Honeywell performed in the manufacture and processing of caprolactam—transporting the caprolactam between Honeywell's Hopewell and Irmo Plants. Meredith and Oakley were no "strangers to the work" of Honeywell, particularly given that the route between Honeywell's Hopewell and Irmo Plants was Meredith's only route while employed by Oakley. Further, Meredith was hauling material manufactured by Honeywell between Honeywell facilities, not independently manufactured products from a third party.[1] Finally, the act of sitting in a chair was not a "discrete activity" removed from the loading process. Meredith presented documentation to the control operator, a required step in the loading process, and then attempted to sit down in the chair. This Court finds that the act of sitting did not remove Mer-

---

**1.** In his memorandum, Meredith relies on several cases that are distinguished from this case because they each involved injuries that occurred during third-party deliveries of independently manufactured products. *See, e.g., Rice v. VVP Am., Inc.*, 137 F.Supp.2d 658 (E.D.Va.2001) (involving injury to an employee of an auto supply business delivering product to an auto glass installer); *Stevens v. Ford Motor Co.*, 226 Va. 415, 309 S.E.2d 319 (1983) (involving injury to an employee of a truck company delivering third-party auto parts to an automobile manufacturer); *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969) (involving injury to an employee of a truck company delivering sheetrock from a sheetrock supplier to a general contractor); *Buffalo Shook Co. v. Barksdale*, 206 Va. 45, 141 S.E.2d 738 (1965) (involving injury to an employee of a sawmill operator delivering lumber to a hogshead and pallet manufacturing company).

edith's activity from the trade, business, or occupation of Honeywell.

In *Smith v. Horn*, 232 Va. 302, 351 S.E.2d 14 (1986), Knox Creek Coal Corporation was in the business of mining, processing, and selling coal. *Id.* at 305, 351 S.E.2d at 17. Knox Creek hired a mining company to mine coal on land owned or leased by Knox Creek and to deliver the coal to a Knox Creek coal processing plant. *Id.* at 305, 351 S.E.2d at 15. A driver employed by the mining company was injured while delivering a load of coal to the Knox Creek plant. *Id.* at 307, 351 S.E.2d at 17. The Supreme Court of Virginia held that the driver was engaged in the trade, business, or occupation of Knox Creek, thus making Knox Creek a statutory employer of the driver. *See id.* The Court reasoned that the driver, by mining and hauling coal to Knox Creek's plant, was performing a "subcontracted fraction" of Knox Creek's main business concern—the mining, processing, and selling of coal. *See id.* at 308, 351 S.E.2d at 17–18.

Under the reasoning followed in *Smith*, Meredith was performing a "subcontracted fraction" of Honeywell's main business concern when hauling caprolactam to the Irmo Plant. Meredith argues, however, that unlike the drivers in *Clean Sweep* and *Smith* who were loading or mining the product in addition to hauling the product, he was merely hauling product. The Supreme Court of Virginia, in *Conlin v. Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453 (1985), found this distinction to be irrelevant. *See id.* at 560, 331 S.E.2d at 455.

In *Conlin*, Ford Motor Company contracted with Turner's Express, Inc. to "haul Ford's machinery and parts between its plants." *Id.* at 557, 331 S.E.2d at 454. Under the agreement, Ford was responsible for the loading and unloading of the cargo, not the Turner's Express driver. *Id.* at 557, 331 S.E.2d at 455. A Ford employee was injured during the loading of a Turner's Express trailer when the forklift she was operating fell through the floor of the trailer. *Id.* at 557, 331 S.E.2d at 454. The Supreme Court of Virginia held that Turner's Express was engaged in Ford's trade, business, or occupation, thus barring the employee's tort action against Turner's Express and the Turner's Express driver of the tractor-trailer. *Id.* at 559, 331 S.E.2d at 455. The Court reasoned that "Turner's Express was not merely delivering merchandise to a job site but was transporting cargo between Ford's assembly plants, an essential part of Ford's business." *Id.* at 560, 331 S.E.2d at 456.

In its analysis, the Supreme Court of Virginia found but one distinction between *Conlin* and an earlier case, *Floyd v. Mitchell*, 203 Va. 269, 123 S.E.2d 369 (1962)—the truck driver in *Floyd* assisted the manufacturer in the loading of the material to be delivered,[2] however, the "Turner's Express' driver did not assist in the loading operation." *Conlin*, 229 Va. at 560, 331 S.E.2d at 455. The Court concluded that "the distinction makes no difference" in whether Turner's Express was engaged in Ford's trade, business, or occupation. *Id.* Accordingly, this Court finds that Meredith's limited or lack of involvement in the loading process makes no difference in this case as to whether Mere-

---

**2.** In *Floyd*, the Supreme Court of Virginia held that a contract carrier's driver was engaged in a manufacturer's trade, business, or occupation where the driver, pursuant to a contract between the contract carrier and the manufacture, delivered the manufacturer's goods to a third parties and participated in the loading process. *See Floyd*, 203 Va. at 270–71, 274, 123 S.E.2d at 370, 372.

dith or Oakley was engaged in Honeywell's trade, business, or occupation.

Meredith was not merely delivering merchandise to a job site, but was transporting caprolactam between Honeywell's manufacturing plants, an essential part of Honeywell's business, on an ongoing basis. Although Meredith's participation in the loading process was limited, Honeywell prescribed the loading procedures that Meredith was required to follow, including where and how to park his truck, where to place his keys, what paperwork to provide and where to take it, and where he may wait during the loading. Honeywell drivers normally followed the same loading procedures followed by Meredith the day of the injury and normally transported caprolactam between Honeywell's manufacturing plants. While Meredith attempts to distinguish between intrastate and interstate hauling, this Court finds the intrastate-interstate distinction to be irrelevant based on the facts in this case.

This Court also finds the contract between Honeywell and Oakley to be irrelevant to the extent that it deems Oakley to be an independent contractor, demands that neither Oakley nor its employees be considered employees of Honeywell, and requires Oakley to obtain workers' compensation insurance for its employees. The Act explicitly provides that "no contract or agreement, written or implied, ... shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title." Va.Code Ann. § 65.2–300(A). Thus, these provisions in the contract have no legal effect on relieving Honeywell's obligations arising under the Act or making it an "other party."

Meredith nonetheless argues that, based on the contract, he has the same status as the plaintiff in *Intermodal Services, Inc. v. Smith*, 234 Va. 596, 364 S.E.2d 221 (1988). In that case, the plaintiff was a self-employed truck driver who leased his tractor to a transportation company for local and interstate hauling. *Id.* at 598, 364 S.E.2d at 222. Intermodal Services hired the plaintiff, through a dispatcher at the transportation company, for a portion of one day to transfer trailers between two trailer yards at a flat rate of $10 to $12 per trailer moved. *Id.* at 599, 364 S.E.2d at 223. The plaintiff was subsequently injured during a transfer while in one of the yards and received workers' compensation from the transportation company. *Id.* The plaintiff then brought a personal injury action against Intermodal Services, however, the Supreme Court of Virginia held that Intermodal Services was not the plaintiff's statutory employer because the plaintiff was a self-employed independent contractor and not an employee of a subcontractor, as required under the Act. *See id.* at 603–04, 364 S.E.2d at 225–26. This case is distinguished from *Intermodal Services* because Meredith was an employee of a Oakley at the time of the injury, and not a self-employed independent contractor like the plaintiff in that case.

Therefore, this Court finds that Meredith was engaged in Honeywell's trade, business, or occupation, making Honeywell a statutory employer of Meredith, and thus, Meredith's remedy under the Virginia Workers' Compensation Act excludes all others against Honeywell.

## IV. Conclusion

For the reasons stated above, Defendant's 12(b)(1) Motion to Dismiss is granted.

An appropriate Order will accompany this Memorandum Opinion.

## ORDER

### (Granting Defendant's Rule 12(b)(1)Motion to Dismiss)

THIS MATTER is before the Court on Defendant's Motion to Dismiss for Lack of

Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Procedure. For the reasons stated in the accompanying Memorandum Opinion, Defendant's Motion to Dismiss is GRANTED.

Defendant's Motion to Exclude Inadmissible Hearsay is HEREBY MOOT.

The Clerk is directed to send a copy of this Order and the accompanying Memorandum Opinion to all counsel of record.

It is SO ORDERED.