703 S.E.2d 552

Irma J. RIFFLE, Administratrix of the Estate of Edgar Riffle, Jr., Deceased, Plaintiff Below, Appellant

v.

C.J. HUGHES CONSTRUCTION COMPANY, a West Virginia Corporation, and Contractors Rental Corporation, a West Virginia Corporation, Defendants Below, Appellees.

No. 35521.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 13, 2010.

Decided Nov. 1, 2010.

J. Timothy DiPiero, Esq., Robert M. Bastress, III, Esq., Heather M. Langeland, Esq., DiTrapano, Barrett & DiPiero, PLLC, Charleston, WV, for Appellant.

John R. Fowler, Esq., Anna B. Williams, Esq., Andrea M. King, Esq., John R. Fowler, PLLC, Charleston, WV, for Appellees.

WORKMAN, Justice:

The appellant and plaintiff below, Irma J. Riffle, Administratrix of the Estate of Edgar Riffle, Jr. ("the Appellant"), appeals from a final order of the Circuit Court of Cabell County, West Virginia, dismissing her claims in this deliberate intent action against the appellee and defendant below, Contractors Rental Corporation ("Contractors"). The Appellant contends that the circuit court erred by granting Contractor's motion to dismiss on the basis of facts not contained in the pleadings. Because the circuit court converted the motion to dismiss into a motion for summary judgment without providing the Appellant with notice or opportunity to respond, the Court reverses the circuit court's final order and remands the case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

The Appellant is the administratrix of the estate of her deceased husband, Edgar Riffle, Jr. ("Mr. Riffle"). Mr. Riffle died on July 28, 2004, at a work-site in Virginia, while employed by Contractors. Contractors had been hired by C.J. Hughes Construction Company ("Hughes"), also an appellee and

defendant below, to remove old gas pipelines at a Columbia Gas Transmission substation in Culpepper, Virginia. Contractors and Hughes (jointly "the Appellees")[1] are both West Virginia corporations that have their principle places of business in Cabell County, West Virginia. At the time of his death, Mr. Riffle was a resident of Mason County, West Virginia.

On June 1, 2005, the Appellant filed a wrongful death action in the Circuit Court of Cabell County, West Virginia. In the complaint, the Appellant asserts that Contractors hired her husband, a union laborer, to load old gas pipelines onto a flatbed trailer for purposes of disposal. She contends that on the evening of July 27, 2004, Hughes employees parked a flatbed trailer, on which the old pipes were to be loaded the next day, directly underneath a high-voltage power line. The following morning, on July 28, 2004, a crane operator working for Contractors began moving pipes onto this flatbed trailer. Mr. Riffle allegedly stood on the trailer and helped guide the pipes by grasping a wire chain which was securing them. The Appellant asserts that, at approximately 10:00 a.m., while Mr. Riffle was holding this wire chain, the crane operator struck the primary conductor line above the trailer and Mr. Riffle was shocked with 7200 volts of electricity.

The shock allegedly knocked Mr. Riffle to the ground and he died shortly thereafter from electrocution. The Appellant contends that a Hughes employee, Mr. Keith Hill, was supposed to be supervising the work site, but that he was not present on either July 27th or July 28th.

In the complaint, the Appellant alleges facts to establish a deliberate intent claim under West Virginia Code § 23–4–2(d)(2)(ii) (2003).[2] She additionally asserts a wrongful death claim under West Virginia's wrongful death statute, West Virginia Code §§ 55–7–5 & –6 (2008).

On September 14, 2005, after being served with the complaint, Contractors and Hughes (jointly "the Appellees"), filed a motion to dismiss under West Virginia Rule of Civil Procedure 12(b)(6), contending that the Appellant had failed to state a claim upon which relief can be granted. The Appellees argued that, pursuant to the doctrine of *lex loci delicti*, the circuit court is required to apply the law of the place where the injury occurred. In this case, the death undisputedly occurred in Virginia. The Appellees contended that, in Virginia, an employee's sole remedy against an employer for a work-related injury or death arises under Virginia's workers' compensation statute. Unlike

---

1. Although both Contractors and Hughes have been designated as appellees in this appeal, the Court notes that the circuit court dismissed only Contractors in the action below and, thus, Hughes remains a party therein.

2. As a general matter, West Virginia's workers' compensation laws provide statutory immunity for employers from tort actions brought by their employees. *Tolliver v. The Kroger Company*, 201 W.Va. 509, 520, 498 S.E.2d 702, 713 (1997). A plaintiff can overcome this statutory immunity if he can demonstrate that his employer acted with "actual specific intent" as that phrase is defined in the "deliberate intent statute," W. Va.Code § 23–4–2(d)(2)(i). Alternatively, an employee can bring a "deliberate intent" claim if he can establish the following five factors, as set forth in the version of the deliberate intent statute in effect as of the date the Appellant filed her complaint:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless thereafter exposed an employee to the specific unsafe working condition intentionally; and

(E) That the employee exposed suffered serious injury or death as a direct and proximate result of the specific unsafe working condition.

W. Va.Code § 23–4–2(d)(2)(ii) (2003).

West Virginia, however, Virginia's workers' compensation laws do not permit an employee to bring a wrongful death claim in the form of a deliberate intent action against his employer. Thus, because Virginia law provides no legal mechanism to bring a civil suit against an employer for a work-related injury or death, the Appellees argued that the claims against Contractors must be dismissed.[3]

In a response brief filed in October 2005, the Appellant argued that, under West Virginia law, the doctrine of *lex loci delicti* does not apply to deliberate intent actions. *See Russell v. Bush & Burchett, Inc.*, 210 W.Va. 699, 703, 559 S.E.2d 36, 40 (2001) ("[O]ur cases are clear that whether a deliberate intention cause of action under *W. Va.Code* § 23–4–2(c) [1994] may be brought against an employer because of an injury that occurred in a *situs* other than West Virginia is not determined by the doctrine of *lex loci delicti*, but under the principles of comity."). Because both her husband and his employer were West Virginia residents, and because her husband was injured and killed while working within the scope of his employment, she further argued that she is entitled to sue Contractors under West Virginia's deliberate intent statute and, thus, the doctrine of *lex loci delicti* does not apply to this case.

Nine months later, on July 14, 2006, the Appellees filed a notice setting a hearing date on their motion to dismiss for August 31, 2006. Then, on August 29, 2006, just two days before that hearing, the Appellees filed a reply brief, arguing that Mr. Riffle was not an "employee," as that term is defined by West Virginia's workers' compensation statute. Thus, they argued, he was not entitled to the benefits of that statute and, therefore, could not allege deliberate intent. Consequently, the Appellees argued that the doc-

trine of *lex loci delicti* would apply to the Appellant's wrongful death claim.

To support their assertion that Mr. Riffle was not a covered employee under the West Virginia workers' compensation statute, the Appellees relied on facts contained in an affidavit executed by Timothy B. Donahoe, the Chief Financial Officer of Contractors. In that affidavit, Mr. Donahoe stated that (1) Contractors hired Mr. Riffle on May 17, 2004, at a union hall in Portsmouth, Ohio, for the sole purpose of working on the construction project in Culpepper, Virginia, (2) Mr. Riffle never worked for Contractors in West Virginia at any time, and (3) Contractors paid workers' compensation premiums for Mr. Riffle to the Commonwealth of Virginia, and did not make such payments to the State of West Virginia. The Appellees attached this affidavit to their reply brief.

Two days later, on the day of the hearing, the Appellant filed a sur-reply brief to address these new facts and arguments. In this sur-reply, the Appellant argued that the circuit court should refuse to consider the facts contained in Mr. Donahoe's affidavit because, in considering a motion to dismiss, courts are limited to the facts contained in the pleadings. The Appellant additionally argued that she had not been given an opportunity prior to the hearing to verify the facts contained in that affidavit or to submit a response affidavit with her own additional facts. Regarding the merits of the Appellees' new legal arguments, she asserted that, to determine whether West Virginia or Virginia law should apply to the case, the circuit court should apply the doctrine of comity. She argued, however, that additional factual development would be required before that issue could be decided.

The circuit court proceeded to conduct a hearing on the motion to dismiss on that same day, August 31, 2006.[4] A month later,

---

**3.** The Appellees argued that the claims against Hughes should also be dismissed pursuant to *lex loci delicti*, because Virginia's workers' compensation law prohibits suits against employers of "statutory fellow employees." *See Clean Sweep Prof'l Parking Lot Maint., Inc. v. Talley*, 267 Va. 210, 591 S.E.2d 79 (2004). The Appellees allege that Mr. Riffle was working in concert with Hughes employees at the job site and, thus, Hughes is the employer of "statutory fellow em-

ployees." The Appellees therefore argued that the Appellant's claims against Hughes are barred under Virginia law. This issue has not yet been decided by the circuit court and is not before this Court.

**4.** The parties did not provide the Court with a transcript of the August 31, 2006, hearing or any of the subsequent hearings. This Court, therefore, cannot assess what arguments were raised

on October 4, 2006, the circuit court advised the parties through a letter that it intended to grant the motion to dismiss pursuant to the doctrine of *lex loci delicti* and asked the Appellees to submit a proposed order. Following this letter, but before any formal order had been entered, the Appellant filed a motion urging the court to reconsider its decision and delay entry of the order until more discovery could be conducted.

On November 22, 2006, the circuit court entered an order dismissing Contractors with prejudice. In that order, the circuit court recited many of the facts introduced by the Appellees through Mr. Donahoe's affidavit, which were not alleged in the complaint. Based on those facts, the circuit court found that "[o]ther than the residency of the parties, there is simply nothing about the facts and circumstances of this case relating to West Virginia." Accordingly, it determined that the Appellant could not state a claim under West Virginia's deliberate intent statute and "[t]herefore, the law of Virginia applies to this case with respect to the claims made against Contractor's [sic] Rental, Inc." The circuit court then dismissed the claims against Contractors with prejudice, but refrained from ruling on the motion to dismiss Hughes. It did not enter a final judgment at that time.

at that hearing, nor whether the circuit court addressed the issue of the timing of Mr. Donahoe's affidavit.

5. The Appellant's motion was titled "Motion for Reconsideration or in the Alternative Motion to Delay Entrance of an Order Until Plaintiff has had an Opportunity to Conduct Discovery." The Court notes that the term "motion for reconsideration" is frequently misused by this State's bar. *See, e.g., Richardson v. Kennedy,* 197 W.Va. 326, 329, 475 S.E.2d 418, 421 (1996) ("Despite our repeated direction to the bench and bar of this State that a 'motion to reconsider' is not a properly titled pleading in West Virginia, it continues to be used."). Typically, parties file "motions for reconsideration" following final orders or judgments, when such requests should properly be made under Rule 59(e) or Rule 60(b). *See* Syl. Pt. 2, *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.,* 196 W.Va. 692, 474 S.E.2d 872 (1996). In this case, however, the Appellant filed her motion prior to the entry of any final order or judgment; indeed, the ruling for which she was seeking reconsideration was interlocutory in nature. *See* W. Va. R. Civ. P. 54(b).

The Appellant's motion seeking reconsideration[5] remained pending until August 17, 2009, when the circuit court entered a "Final Order" denying the "motion to reconsider" and affirming the dismissal of Contractors with prejudice. The August 17, 2009 order contained no legal or factual analysis, but affirmed Contractors' dismissal "for good cause shown." The circuit court directed that judgment be entered in favor of Contractors, thereby permitting the Appellant to appeal the dismissal, despite the pendency of the claims against Hughes. *See* W. Va. R. Civ. P. 54(b). On September 10, 2009, the circuit court entered an order staying the case pending appeal.

## II. STANDARD OF REVIEW

 The Appellant herein appeals from a final judgment dismissing Contractors from the case. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). Motions to dismiss for failure to state a claim pursuant to West Virginia Rule of Civil Procedure 12(b)(6), as filed by the Appellees in this case, should only be granted when " 'it is clear that no relief could be granted under any set of facts that could be

This Court has previously held that "a trial court has plenary power to reconsider, revise, alter, or amend an interlocutory order...." Syl. Pt. 2, in part, *Taylor v. Elkins Home Show, Inc.,* 210 W.Va. 612, 558 S.E.2d 611 (2001). Thus, when pertaining to interlocutory orders, motions to reconsider " 'do not necessarily fall within any specific ... Rule. They rely on the inherent power of the rendering ... court to afford such relief from interlocutory judgments ... as justice requires.' " *Hubbard v. State Farm Indem. Co.,* 213 W.Va. 542, 551, 584 S.E.2d 176, 185 (2003) (*quoting Taylor,* 210 W.Va. at 617, 558 S.E.2d at 616). Indeed, as this Court has previously noted, " [n]ot only is a motion to reconsider an allowable method of reviewing a prior order, it is the most appropriate and advantageous method of seeking relief from an interlocutory order for a party to pursue.' " *Hubbard,* 213 W.Va. at 551 n. 19, 584 S.E.2d 176, 185 n. 19 (*quoting Fisher v. Nat'l R.R. Passenger Corp.,* 152 F.R.D. 145, 149 (S.D.Ind.1993)). Consequently, the Appellant's use of the term "motion for reconsideration" in this case is not in error.

proved consistent with the allegations.'" *Murphy v. Smallridge,* 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) *(quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

■ Here, the primary issue on appeal concerns the circuit court's application of West Virginia Rule of Civil Procedure 12(b) in dismissing Contractors from the case. "An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review." Syl. Pt. 4, *Keesecker v. Bird,* 200 W.Va. 667, 490 S.E.2d 754 (1997).

### III. DISCUSSION

The Appellant raises two issues in this appeal. First, she contends that the circuit court erred by dismissing Contractors on the basis of facts not contained in the pleadings. Second, she argues that sufficient facts exist to state a claim against Contractors under West Virginia's deliberate intent statute. Because the Court concludes that the circuit court committed reversible error in dismissing Contractors based on facts not included in the pleadings, without the Appellant having notice and an opportunity to respond, the Court will not address the second issue raised in this appeal.[6]

■ This Court has long held that, in ruling on a motion made pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, a court is limited to considering the facts properly alleged in the pleadings.

> "Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith. . . ."

Syl. pt. 4, in part, *U.S. Fid. & Guar. Co. v. Eades,* 150 W.Va. 238, 144 S.E.2d 703 (1965), *overruled on other grounds by Sprouse v. Clay Comm., Inc.,* 158 W.Va. 427, 211 S.E.2d 674 (1975); *accord* Syl. Pt. 1, *Estate of Robinson ex rel. Robinson v. Randolph County Comm'n,* 549 S.E.2d 699, 209 W.Va. 505 (2001); *see also* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[3], at 354 (3d ed.2008). This limit on what can be considered arises from the language of Rule 12(b), which provides that

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment* and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W. Va. R. Civ. P. 12(b) (emphasis added). Consequently, where a court relies on facts not contained in the pleadings in ruling on a motion to dismiss, it effectively converts such motion to a motion for summary judgment.

Here, the circuit court clearly relied on matters outside the pleadings in its order dismissing the Appellant's claims against Contractors. Specifically, in paragraph three of that order, the circuit court states that "[p]laintiff's decedent never worked for Contractors Rental in the State of West Virginia. Rather, he only worked for this Defendant in the Commonwealth of Virginia." This information was contained in Mr. Donahoe's affidavit, but was not alleged in the pleadings. Similarly, in paragraph four, the circuit court finds that "Edgar Riffle was hired for the Virginia job out of a Portsmouth, Ohio Union Hall." Again, this fact was not alleged in the Appellant's complaint, but rather was presented in Mr. Donahoe's

---

**6.** Indeed, the question of whether the Appellant can bring a deliberate intent claim under the circumstances presented in this case requires a fact-based analysis. In arguing that she can bring such a claim, the Appellant relies on facts not included in the pleadings. The parties, however, had not fully developed these issues through discovery at the time the lower court dismissed the action. Consequently, not only is consideration of the second issue in this appeal unnecessary, it would be premature at this time.

affidavit. Then, in paragraphs six and seven, the circuit court notes that Contractors paid workers' compensation premiums for Mr. Riffle's employment to the Commonwealth of Virginia, and that the Appellant sought workers' compensation benefits from that state. Neither of these facts appear in the complaint and, interestingly, Mr. Donahoe's affidavit only states that Contractors paid workers' compensation benefits to Virginia; nothing in any of the documents before the circuit court at the time the order was entered alleged that the Appellant sought and/or received workers' compensation benefits from Virginia.

Notably, the circuit court's order never indicates that it is treating the Appellees' motion to dismiss as a motion for summary judgment. Rather, the circuit court simply dismisses the claims without reference to either Rule 12(b)(6) or Rule 56(c). From the face of the order, however, it is clear that the circuit court relied on the facts presented for the first time in Mr. Donahoe's affidavit to conclude that the Appellant was barred from bringing a deliberate intent claim.

■ Consequently, the circuit court converted the Appellees' motion to dismiss under Rule 12(b)(6) to a motion for summary judgment by relying on facts presented for the first time in Mr. Donahoe's affidavit. While these factual allegations, if true, may ultimately justify summary judgment, discovery was not yet complete and the Appellant had neither notice of the conversion nor an opportunity to develop and present her own additional facts.

■ Rule 12(b) provides that, when a motion to dismiss under Rule 12(b)(6) is converted to a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In the instant case, the Appellees submitted Mr. Donahoe's affidavit just two days before the circuit court's hearing on the motion. Although the Appellant filed a sur-reply brief asking the circuit court to either ignore the newly submitted facts or give her an opportunity to develop the record and respond accordingly, the circuit court proceeded with the hearing two days later, and then advised the parties

of its decision shortly thereafter. Nothing in the record indicates that the circuit court ever advised the Appellant that it intended to rely on those new facts in dismissing Contractors, nor did the circuit court afford the Appellant opportunity to develop and present her own additional facts. The question, therefore, is whether the circuit court's error in converting the Appellees' motion to dismiss to a motion for summary judgment without providing the Appellant with opportunity to develop and present additional facts constitutes reversible error.

■ As an initial matter, pursuant to Rule 56(c), a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing." W. Va. R. Civ. P. 56(c). While the Appellees in the instant action did not specifically file a motion for summary judgment, their reply brief with Mr. Donahoe's affidavit attached was served a mere two days before "the time fixed for the hearing." *See id.* Because this affidavit served as the basis for the court's conversion of the motion to dismiss to a motion for summary judgment, the timing of the Appellees' reply brief and affidavit violated the requirements of Rule 56.

Moreover, although this Court has never directly held that converting a motion to dismiss to a motion for summary judgment under Rule 12(b) constitutes reversible error, it has stated in dicta that

if a circuit court considers matters outside the pleadings in connection with a motion to dismiss, we must treat the motion as one for summary judgment. *Failure to treat such a motion as one for summary judgment and to provide the litigants with notice and an opportunity to respond can constitute reversible error.*

*Harrison v. Davis,* 197 W.Va. 651, 657 n. 16, 478 S.E.2d 104, 110 n. 16 (1996) (emphasis added). Similarly, the Litigation Handbook on West Virginia Rules of Civil Procedure provides that:

[w]hen a motion to dismiss under Rule 12(b)(6) is converted into a Rule 56 motion for summary judgment, *it is important that the court give the parties notice of the changed status of the motion and a rea-*

*sonable opportunity to present all material that is pertinent to such a motion under Rule 56. To treat a motion to dismiss as a motion for summary judgment without permitting the adverse party a reasonable opportunity to submit pertinent material is error.* Absence of formal notice by the court will be excused when it is harmless or the parties were otherwise apprised of the conversion.

Cleckley, Davis, & Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[3], at 355–56 (emphasis added) (footnotes omitted).

Furthermore, this Court has held that a reasonable opportunity to submit pertinent material is required when a motion for judgment on the pleadings filed under Rule 12(c), as opposed to Rule 12(b)(6), is being converted to a motion for summary judgment. *Kopelman and Assocs., L.C. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910 (1996). In considering this issue, the Court noted that a Rule 12(c) dismissal is analogous to a dismissal under Rule 12(b)(6), because in each instance, dismissal is only appropriate "if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations contained within the pleadings." *Id.* at 493, 473 S.E.2d at 914. Moreover, each rule provides for the conversion of a motion to dismiss to a motion for summary judgment, so long as all parties are given "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." W. Va. R. Civ. P. 12(b) & 12(c).

 The Court in *Kopelman* explained that "[t]he 'reasonable opportunity' language of Rule 12(c) is designed to prevent unfair surprise to the parties." 196 W.Va. at 495, 473 S.E.2d at 916. Consequently, the Court held that:

> [w]hen a motion for judgment on the pleadings under Rule 12(c) of the West Virginia Rules of Civil Procedure is converted into a motion for summary judgment, the requirements of Rule 56 of the West Virginia Rules of Civil Procedure become operable. *Under these circumstances, a circuit court is required to give the parties notice of the changed status of the motion and a reasonable opportunity*

to present all material made pertinent to such a motion by Rule 56. In this way, no litigant will be taken by surprise by the conversion. *The absence of formal notice will be excused only when it is harmless or the parties were otherwise apprised of the conversion.* Once the proceeding becomes one for summary judgment, the moving party's burden changes and the moving party is obliged to demonstrate that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Kopelman*, 196 W.Va. 489, 473 S.E.2d 910, Syl. Pt. 1 (emphasis added). Thus, in the context of Rule 12(c), a circuit court's failure to provide a plaintiff with notice and reasonable opportunity to present additional facts when converting a motion to dismiss to a motion for summary judgment can constitute reversible error.

 Because a Rule 12(c) dismissal is analogous to a dismissal under Rule 12(b)(6), *Kopelman*, 196 W.Va. at 493, 473 S.E.2d at 914, and because both rules require that, when converting a motion to dismiss to a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion," W. Va. R. Civ. P. 12(b) & 12(c), the Court now holds that syllabus point one from *Kopelman and Associates, L.C. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910 (1996), is equally applicable to such conversions under West Virginia Rule of Civil Procedure 12(b). Thus, when a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is converted into a motion for summary judgment, the requirements of Rule 56 of the West Virginia Rules of Civil Procedure become operable. Under these circumstances, a circuit court is required to give the parties notice of the changed status of the motion and a reasonable opportunity to present all material made pertinent to such a motion by Rule 56. In this way, no litigant will be taken by surprise by the conversion. The absence of formal notice will be excused only when it is harmless or the parties were otherwise apprised of the conversion. Once the proceeding be-

**590**

comes one for summary judgment, the moving party's burden changes and the moving party is obliged to demonstrate that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In this case, the Appellees' introduction of new facts two days before the hearing on their motion to dismiss certainly created the unfair surprise to the Appellant that this rule seeks to prevent. The Appellant attempted, to no avail, to persuade the circuit court that more time was necessary to afford her a reasonable opportunity to respond. Not only was she not given the additional time necessary, nothing in the record indicates that the circuit court ever even notified the Appellant that it did, in fact, intend to convert the motion to dismiss to a motion for summary judgment. Under these facts, the circuit court's failure to notify the Appellant of its intentions, coupled with its failure to provide reasonable opportunity to develop and present pertinent material, was not harmless and constitutes reversible error.

Notably, the Appellees do not dispute that the circuit court converted their motion to dismiss to a motion for summary judgment, nor do they argue that the Appellant was given opportunity to submit additional pertinent information prior to the circuit court's original order. Rather, they contend that the Appellant should have supplemented the record after the circuit court's order dismissing Contractors, but before its subsequent order denying her motion to reconsider. The Appellees, however, fail to recognize that, once the circuit court dismissed Contractors from the case in November 2006, the Appellant was not entitled to conduct discovery as to the claims against Contractors, nor could she supplement the record without leave of the circuit court. Consequently, the Appellant was effectively prevented from ever discovering or producing any evidence to dispute the facts contained in Mr. Donahoe's affidavit.

## IV. CONCLUSION

For these reasons, the Court reverses the circuit court's orders dismissing Contractors with prejudice, dated November 22, 2006,

and August 17, 2009, and remands the action for further proceedings consistent with this opinion.

Reversed and Remanded.