# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2021 Term

_____

No. 19-0741

_____

**FILED**

**March 26, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

THE WEST VIRGINIA STATE POLICE,
DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY,
Defendant Below, Petitioner

V.

J.H., A MINOR, BY AND THROUGH
HIS PARENT AND NEXT FRIEND, L.D.,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Michael Lorensen, Judge
Civil Action No. 19-C-161

REVERSED AND REMANDED

_____

Submitted: January 13, 2021
Filed: March 26, 2021

Montè L. Williams
Steptoe & Johnson PLLC
Morgantown, West Virginia
Mark G. Jeffries
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Attorneys for the Petitioner

Paul G. Taylor
Martinsburg, West Virginia
Attorney for the Respondent

CHIEF JUSTICE JENKINS delivered the Opinion of the Court.

**JUSTICES HUTCHISON** and **WOOTON** dissent and reserve the right to file dissenting opinions.

**SYLLABUS BY THE COURT**

1.      "Under W. Va. Code, 58-5-1 [1998], appeals only may be taken from final decisions of a circuit court.  A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined."  Syllabus point 3, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995).

2.      "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."  Syllabus point 1, *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

3.      Where a complaint fails to adequately plead specific facts that (1) allow the court to draw the reasonable inference that the defendant is liable for the harm alleged, and (2) defeat a qualified immunity defense, then a circuit court's order deferring its ruling on a motion to dismiss based upon an assertion of qualified immunity is an interlocutory ruling that is subject to immediate appeal under the collateral order doctrine.

4.      "When a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de*

i

*novo*." Syllabus point 4, in part, *Ewing v. Board of Education of County of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998).

5.      "The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine.  Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition."  Syllabus point 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

6.      "'In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.'  Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995)."  Syllabus point 7, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

7.      "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must

determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus point 11, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

8. "If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or

employee." Syllabus point 12, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

**Jenkins, Chief Justice:**

Petitioner, the West Virginia State Police, Department of Military Affairs and Public Safety (the "WVSP"), appeals the circuit court's July 26, 2019 order denying its motion to dismiss the first amended complaint filed by Respondent, J.H.[1], a minor, by and through his parent and next friend, L.D. ("J.H."), for failure to state a claim upon which relief can be granted. On appeal, the WVSP contends that the circuit court erred in three ways by (1) committing plain error in denying the WVSP's motion to dismiss when the court considered matters outside the pleadings without giving notice to the parties and without converting the WVSP's motion to dismiss into one for summary judgment; (2) denying the WVSP's motion to dismiss the vicarious liability claim on qualified immunity grounds; and (3) denying the WVSP's motion to dismiss the negligent training and supervision claim on qualified immunity grounds. Conversely, J.H. asserts that the circuit court correctly decided the issues by denying in part the WVSP's motion to dismiss and deferring its ruling on the issue of qualified immunity until discovery had been undertaken.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred by considering matters outside the pleadings and failing to appropriately consider whether qualified immunity applied to shield the WVSP from suit. Accordingly, we reverse the July 26,

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015).

1

2019 order of the circuit court and remand this case to the circuit court to enter an order dismissing the vicarious liability and negligent training and supervision claims against the WVSP and for further proceedings consistent with this opinion.

# I.

## FACTUAL AND PROCEDURAL HISTORY

This appeal arises from an incident on November 19, 2018, in Berkeley County, West Virginia, involving J.H., WVSP Troopers Michael Kennedy and Derek Walker (the "Trooper Defendants"), and Berkeley County Sheriff's Deputies Christopher Merson and Austin Ennis (the "Officer Defendants"). On April 24, 2019, J.H. filed a complaint against the WVSP, the Trooper Defendants, and the Officer Defendants.[2] In the complaint, J.H. alleged that all individual law enforcement officials "were acting both within and outside the scope of their duties" when, on November 19, 2018, they "individually and acting together as a mob under color of law, brutally and severely beat and hit . . . J.H., a minor, in [and] about the head and body, causing him injuries along with bodily damage, pain[,] and suffering." J.H. further asserted that the Trooper Defendants' actions were imputed to the WVSP pursuant to the doctrine of *respondeat superior*, and that the WVSP was vicariously liable for the Trooper Defendants' torts. In addition, with respect to the WVSP, J.H. contended that it was negligent and/or reckless in failing to

---

[2] We note that the Trooper Defendants and the Officer Defendants have not filed any documents in this appeal.

2

(1) properly train its officers; (2) seek out, negate, and prevent the execution of any policy and agreement "wherein its members physically assault and beat up any person accused of a criminal offense . . . , and [] [in] fail[ing] to discipline its members who have engaged in such conduct in the past"; and (3) exercise field supervision over its officers. The complaint also alleged that the WVSP was "negligent and/or reckless in other manners of its operation and control." J.H. further averred that the WVSP and the Trooper Defendants violated ten statutes: West Virginia Code sections 15-2-12(b)(1),[3] 15-2-14,[4] 15-2-13(a),[5]

---

[3] West Virginia Code section 15-2-12 (eff. 2010) is titled "Mission of the State Police; powers of superintendent, officers and members; patrol of turnpike." West Virginia Code section 15-2-12(b)(1) provides that

> The superintendent and each of the officers and members of the division are hereby empowered:
>
> (1) To make arrests anywhere within the state of any persons charged with the violation of any law of this state, or of the United States, and when a witness to the perpetration of any offense or crime, or to the violation of any law of this state, or of the United States, to make arrests without warrant; to arrest and detain any persons suspected of the commission of any felony or misdemeanor whenever a complaint is made and a warrant is issued thereon for the arrest, and the person arrested shall be immediately brought before the proper tribunal for examination and trial in the county where the offense for which the arrest has been made was committed[.]

[4] West Virginia Code section 15-2-14 (eff. 1977) is titled "Oath of superintendent and members."

[5] West Virginia Code section 15-2-13 (eff. 2004) is titled "Limitations upon members; exceptions." West Virginia Code section 15-2-13(a) provides that "[n]o member of the West Virginia state police may in any way interfere with the rights or property of any person except for the prevention of crime."

3

61-2-9,[6] 61-5-16,[7] 61-5-28,[8] 61-6-7,[9] 61-6-12,[10] 61-6-21,[11] and 61-10-31.[12]  The violation of these statutes, according to J.H., gave rise to a cause of action under West Virginia Code section 55-7-9 (eff. 1923), which provides that "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."  The claims against the Officer Defendants were similar to those asserted against the Trooper Defendants.

---

[6] West Virginia Code section 61-2-9 (eff. 2017) is titled "Malicious or unlawful assault; assault; battery; penalties."  This section provides for the crimes of malicious assault, assault, and battery, and for the criminal penalties upon conviction.

[7] West Virginia Code section 61-5-16 (eff. 1866) is titled "Refusal of officer to execute act or process of legislature or order of governor; penalty."

[8] West Virginia Code section 61-5-28 (eff. 1923) is titled "Failure to perform official duties; penalty."  This provision provides that "[a]ny person holding any office or appointment in this State, who shall wilfully [sic] fail or refuse to perform any duty required of him by law, shall be guilty of a misdemeanor, and, upon conviction thereof, shall, if no other punishment be prescribed by law therefor, be fined not exceeding one hundred dollars."  Id.

[9] West Virginia Code section 61-6-7 (eff. 1923) is titled "Conspiracy to inflict injury to persons or property; infliction of injury or death in pursuance thereof; penalties."  This section provides for the crimes of conspiracy to inflict injury to persons or property and infliction of injury or death in pursuance thereof and for the criminal penalties upon conviction.

[10] West Virginia Code section 61-6-12 (eff. 1923) is titled "Mobs and lynchings; penalties; liability of county or city."

[11] West Virginia Code section 61-6-21 (eff. 1987) is titled "Prohibiting violations of an individual's civil rights; penalties."

[12] West Virginia Code section 61-10-31 (eff. 1971) is titled "Conspiracy; construction of section; penalties."

Following the filing of the complaint, the Trooper Defendants filed separate motions to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. The Trooper Defendants each argued that the statutes cited by J.H. in his complaint did not create private causes of action and that each Trooper Defendant was entitled to qualified immunity. J.H. filed a response in opposition to Trooper Walker's motion to dismiss, but it does not appear from the record that he responded to Trooper Kennedy's motion to dismiss.

During this time, J.H. filed his First Amended Complaint ("amended complaint") which was almost identical to the original complaint, with two notable exceptions. First, J.H. asserted that not only were the negligent acts of the Trooper Defendants and the Officer Defendants the proximate cause of his injuries, but also that they "were done with malicious purpose, in bad faith, and were reckless." Second, J.H. alleged that all the Defendants, generally, "negligently and intentionally inflicted emotional distress" on him.

By separate orders that included identical findings, the circuit court denied the motions to dismiss, in part, and deferred ruling on qualified immunity.[13] The circuit court found that "[e]ven accepting the analysis of the statutes involved, the [Trooper

_____

[13] It does not appear from the record presented to us that the Trooper Defendants appealed their respective orders.

5

Defendants'] motion[s] fall[] well short of demonstrating 'beyond doubt' that the Plaintiff

can prove no facts which would entitle him to relief." With respect to qualified immunity,

the circuit court further found that

> [b]ased solely on the amended complaint . . . there is an absence of well-pleaded facts to allow the court to determine whether the physical actions visited upon J.H. [were] objectively reasonable force to effect an arrest or a gratuitous infliction of pain on a recalcitrant prisoner. A complaint should be a short, plain statement of the claim showing the pleader is entitled to relief. Rule 8, Rules of Civil Procedure. It is plain enough from the pleading now before the court that the Plaintiff claims he was unlawfully beaten incident to an arrest.
>
> In a case where a defendant may be entitled to qualified immunity, the Plaintiff is burdened to allege specific facts which would justify a finding that the government official knew or reasonably should have known that his actions violated clearly established law. An allegation of injury during the course of an arrest is not sufficient to particularly plead facts overcoming the immunity asserted by the Defendant. Qualified immunity, however, is not a circumstance under which Rule 9, Rules of Civil Procedure, requires specific pleading.

Nevertheless, the circuit court "believe[d] the best course of action [was] to permit

discovery to proceed to permit discovery sufficient to determine whether facts exist which

would demonstrate a public officials [*sic*] violation of a clearly established law of which a

reasonable person would have known." The circuit court also noted that these "matters are

difficult to determine on a motion filed pursuant to Rule 12(b)(6), Rules of Civil

Procedure."

6

The WVSP moved to dismiss J.H.'s first amended complaint, on July 18, 2019, arguing that it could not be held vicariously liable for the Trooper Defendants' torts where J.H. failed to plead a viable tort claim against the Trooper Defendants and where J.H. pled that the Trooper Defendants were acting outside the scope of their employment. The WVSP further asserted that the Trooper Defendants were "entitled to qualified immunity," and that it could not be held vicariously liable for their alleged actions. The WVSP also contended that it was entitled to qualified immunity from J.H.'s negligent training and supervision claim given his failure to plead that the WVSP acted fraudulently, oppressively, or maliciously, or that it violated a clearly established law or right in performing its discretionary functions. Finally, the WVSP argued that J.H. failed to state a direct claim of negligent or intentional infliction of emotional distress because no facts showed that the WVSP caused him emotional distress or, alternatively, because it was qualifiedly immune from that claim in the absence of an allegation that the WVSP acted fraudulently, oppressively, or maliciously, or in violation of a clearly established law or right. J.H. filed a response in opposition arguing that the circuit court had already addressed these or similar issues in its previous orders denying the Trooper Defendants' respective motions for summary judgment.

On July 26, 2019, the circuit court denied the WVSP's motion to dismiss. The circuit court found that the WVSP failed

> to address that the gist of [J.H.'s] case is a battery upon [J.H.]
> who then seeks additionally to base his recovery on statutes
> which may or may not provide a private right of

7

relief. . . . Assuming without deciding that the [WVSP] is correct on this point, that hardly decides . . . whether the Plaintiff can make a case for battery. . . . The [WVSP's] brief simply does not explain why "beat[ing]" or "hit[ting]" the Plaintiff, as alleged in the First Amended Complaint would not suffice to establish a right of recovery if proved to the satisfaction of a jury.

The circuit court also stated that it would "not making [sic] findings relative to qualified immunity and defer[red] whether this defense will afford any relief to the [WVSP]. . . . Given the qualified nature of the defense, there is no reason to prohibit factual inquiry."

Following entry of the order denying the WVSP's motion to dismiss, the WVSP timely appealed to this Court. Subsequent to the filing of the notice of appeal, but prior to the filing of the WVSP's brief to this Court, the parties appeared before the circuit court on August 30, 2019, for a hearing on the WVSP's motion to stay the circuit court proceedings pending its appeal to this Court. At that hearing, the circuit court stated that "one of the items that was received by the [c]ourt . . . was the—I think it is described as [Officer] Merson's redacted video of the transaction," which is dashcam footage of the events giving rise to J.H.'s claims. During a discussion with the parties, the circuit court inquired, "Am I required to blind myself to that kind of stuff in order to decide a motion to dismiss?" The court wondered whether the video "could . . . stand instead of a reasonably particularized allegation?" Counsel for the WVSP responded, "I believe you are [supposed to blind yourself] . . . . You're either required to not consider [it], or convert the motion as one for summary judgment and give the other party a chance to respond to that with

8

evidence of its own." Though the court acknowledged that it did not state in its order denying the WVSP's motion to dismiss that it had considered the footage, the court indicated at this hearing that "it was clearly in my mind when I was considering your motion." The court denied the WVSP's motion to stay, but by order entered October 31, 2019, this Court stayed proceedings in the circuit court pending resolution of this appeal.

## II.

### STANDARD OF REVIEW

As an initial matter, the parties disagree as to whether this Court has jurisdiction to review the circuit court's order. Accordingly, we must first decide whether this Court has jurisdiction to review this interlocutory matter and issue a decision. It is well-established that

> [u]nder W. Va. Code, 58-5-1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

Syl. pt. 3, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995). Nevertheless, there are exceptions to this general rule. For example, in Syllabus point 1 of *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015), we held: "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." J.H. argues that the circuit court's order in this case does not fall within that

9

exception because the order did not outright deny the relief, but instead deferred the ruling on qualified immunity pending discovery.

As the United States Supreme Court has directed, "qualified immunity is an immunity from suit rather than a mere defense to liability[.]" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (internal citation and quotations omitted). Furthermore, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive[.]" *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). *See also Yoak v. Marshall Univ. Bd. of Governors*, 223 W. Va. 55, 59, 672 S.E.2d 191, 195 (2008) (per curiam) (discussing qualified immunity and commenting that "[w]e are persuaded that 'sparing the defendant from having to go forward with an inquiry into the merits of the case' includes the burden of discovery. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001)").

While this Court previously has noted the importance of resolving qualified immunity issues as early as practicably possible, the parties do not cite to any case law in this jurisdiction that squarely addresses the threshold issue we have currently before us:[14]

---

[14] In *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015), this Court did review the qualified immunity issue brought before us despite the fact that "[t]he circuit court's order failed to discuss whether the Board or Mr. Linger should be dismissed because they have qualified immunity for their discretionary acts." 236 W. Va. at 659, 783 S.E.2d at 80. The instant matter is slightly different though

is an order of a circuit court deferring ruling on qualified immunity to conduct discovery an appealable interlocutory order under the collateral order doctrine? Other courts, however, have addressed this issue.

In a United States Court of Appeals for the Fifth Circuit case, *Helton v. Clements*, 787 F.2d 1016 (5th Cir. 1986), the court addressed a similar issue. Specifically, in *Helton*, the court found that "a refusal to rule on a claim of immunity, like the explicit denial of a claim of immunity, is also immediately appealable under the collateral order doctrine." *Id.* at 1017. In so finding, the court reasoned that "like an explicit denial of a claim of absolute or qualified immunity, the refusal to rule on a claim of immunity until trial is 'effectively unreviewable on appeal from a final judgment.' *Mitchell* [*v. Forsyth*], 472 U.S. [511, 526-27], 105 S. Ct. [2806, 2816, 86 L. Ed. 2d 411 (1985)]." *Id.* The court noted that "[i]n both cases a defendant's entitlement under immunity doctrine to be free from suit and the burden of avoidable pretrial matters is effectively lost if the case erroneously goes to trial." *Id.* (citation omitted). Additionally, the court found that,

> like the denial of a claim of immunity, the refusal to rule on such claims conclusively determines the defendant's claim of right not to *stand trial* because there are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred.

---

because the circuit court here specifically made a finding that it was deferring its ruling on qualified immunity pending further discovery.

11

*Id.* (internal citation and quotations omitted). Last, the court stated that "apart from whether a district court denies or refuses to rule on the claim of immunity, the claim of immunity in both cases is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Id.* (internal citation and quotations omitted). As a result, the court concluded that "[i]t is clear to us, therefore, that an order which declines or refuses to rule on [a] motion to dismiss on the basis of a claim of immunity is an appealable final decision . . . notwithstanding the absence of a final judgment."[15] *Id.* (internal citation and quotations omitted).

The Fifth Circuit reiterated its position in *Backe v. LeBlanc*, again finding that the appellate court had jurisdiction to review an order in certain circumstances "when the [trial] court refuses to rule on a qualified immunity defense," and vacating the district court's order finding that "that is *precisely* the point of qualified immunity: to protect public officials from expensive, intrusive discovery until and unless the requisite showing overcoming immunity is made." 691 F.3d at 648. However, the *Backe* Court noted that the Fifth Circuit has established a certain "procedure under which a [trial] court may defer

_____

[15] We recognize that the Fifth Circuit used a similar test to our three-factor test as noted in *James M.B. v. Carolyn M.*, 193 W. Va. 289, 293 n. 4, 456 S.E.2d 16, 20 n. 4 (1995). We stated that "[a]n interlocutory order would be subject to appeal under [the collateral order] doctrine if it (1) conclusively determines the disputed controversy, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Id.* (internal citations and quotations omitted).

its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Id.* Essentially,

> a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *After* the district court finds a plaintiff has so pled, if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Lion Boulos* [*v. Wilson*], 834 F.2d [504,] [] 507-08 [(1987)].

*Id.*

The United States Court of Appeals for the Eighth Circuit also has similarly found that it has "jurisdiction over interlocutory appeals arising not only from a district court's reasoned denial of qualified immunity, but also from a district court's failure or refusal to rule on qualified immunity."[16] *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014). The Eighth Circuit found that

> "[l]ike denials of qualified immunity, a refusal to rule on qualified immunity is effectively unreviewable on appeal because once the defendant has had to proceed to trial, he or she has lost the benefit of qualified immunity, that is, the entitlement to be free from suit." *Parton v. Ashcroft*, 16 F.3d 226, 228 (8th Cir. 1994) (exercising jurisdiction and remanding "for a ruling on the issue of qualified immunity"). The potentially lost benefits of qualified immunity include the costs and expenses of litigation, and discovery in particular,

---

[16] We note that the Eighth Circuit limited its jurisdiction to remanding the matter back to the district court for a determination of the qualified immunity issue. *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014).

13

which is a type of burden distinct from appeals and other lawyer-driven aspects of a case. . . . For this reason, both the Supreme Court and our court "repeatedly have stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam); *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007).

*Payne*, 749 F.3d at 700-01.

Because an objective of qualified immunity is to save specific individuals and agencies from suit and, when appropriate,[17] from pre-trial discovery and litigation, deferring a ruling on qualified immunity acts as an effective denial of such protections. Accordingly, we now hold that where a complaint fails to adequately plead specific facts that (1) allow the court to draw the reasonable inference that the defendant is liable for the harm alleged, and (2) defeat a qualified immunity defense, then a circuit court's order deferring its ruling on a motion to dismiss based upon an assertion of qualified immunity is an interlocutory ruling that is subject to immediate appeal under the collateral order doctrine. As explained more fully below, J.H.'s complaint failed to overcome this standard, and consequently, we have jurisdiction to hear this interlocutory appeal.

---

[17] For example, "unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition." Syl. pt. 1, in part, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

Having established that this matter is properly before us, we now turn to the applicable standard of review. This Court previously has held that "[w]hen a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*." Syl. pt. 4, in part, *Ewing v. Bd. of Educ. of Cty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998). "The purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* is to test the sufficiency of the complaint." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (per curiam). Furthermore, "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff . . ., and its allegations are to be taken as true." *Marple*, 236 W. Va. at 660, 783 S.E.2d at 81 (quotations and citation omitted). "[D]ismissal for failure to state a claim is only proper where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint." *Id.* (citation omitted). However, a plaintiff's complaint must, "at a minimum[,] . . . set forth sufficient information to outline the elements of his [or her] claim," and, "in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff." *Id.* (quotations and citations omitted).

Furthermore, with respect to the issue of qualified immunity presented in this case,

> [t]he ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as

15

to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.

Syl. pt. 1, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996). With these standards in mind, we review the circuit court's decision.

## III.

## DISCUSSION

The WVSP asserts three assignments of error on appeal.[18] First, the WVSP contends that the circuit court committed plain error in its order of July 26, 2019, which denied the WVSP's motion to dismiss, by considering matters outside the pleadings—a video of the incident at issue—when ruling on the WVSP's motion, without providing notice to the WVSP and without converting the WVSP's motion to dismiss into one for summary judgment. Second, the WVSP argues that the circuit court erred as a matter of

---

[18] In his response brief, J.H. argues that the WVSP lacks standing to bring this appeal because the WVSP is seeking "to appeal rulings concerning [the Trooper Defendants] that are not parties to this appeal which rulings are now law of the case below." (Respondent's Brief at 7). However, we are not persuaded by this argument. We previously have held that, "[t]o entitle any person to obtain a writ of error or appeal from a judgment, he must be both a party to the case and be aggrieved by the judgment." Syl. pt. 1, *Williamson v. Hays*, 25 W. Va. 609, 609 (1885). *See also Doe v. Pub. Citizen*, 749 F.3d 246, 257 (4th Cir. 2014) ("As a general rule, only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment. Indeed, it is typically only parties who are bound by a judgment and sufficiently aggrieved by it who possess constitutional and prudential standing to seek appellate review of the district court's decision." (internal citations omitted)). In the present matter, the WVSP is a party to the underlying litigation and it is appealing the order regarding its own motion to dismiss involving issues pertaining to its own qualified immunity assertion. Consequently, it is clear that there is standing in this matter.

16

law in its order of July 26, 2019, when it denied the WVSP's motion to dismiss the vicarious liability claim on qualified immunity grounds despite the court's earlier finding, in response to the Trooper Defendants' motion to dismiss, that there was an absence of well-pleaded facts to show that the Trooper Defendants used excessive force and that a mere allegation of injury during the course of an arrest was insufficient to overcome an assertion of qualified immunity. Third, the WVSP avers that the circuit court erred as a matter of law in its order of July 26, 2019, when it denied the WVSP's motion to dismiss the negligent training and supervision claim on qualified immunity grounds, even though neither J.H. nor the circuit court identified any clearly established law the WVSP was alleged to have violated in its training and supervision of the Trooper Defendants. We will address each of the assignments of error below.

### A.  *Motion to Dismiss*[19]

The WVSP raises, as its first assignment of error on appeal, that the circuit court committed plain error when it improperly viewed and relied upon the video of the incident at issue without placing the parties on notice that it was going to do so, allowing the parties to produce additional evidence, and converting the motion to dismiss into a

---

[19] While the issue regarding whether the circuit court erred by considering documents outside the pleading is arguably interlocutory because it is not a final order here, it is apparent that we are still able to review it because, as explained herein, the consideration of the video significantly overlapped with the issue of qualified immunity. *See Jarvis v. W. Va. State Police*, 227 W. Va. 472, 475, 711 S.E.2d 542, 545 (2010).

17

motion for summary judgment. We have stated that "[p]lain error is error that is plain, that affects substantial rights, and that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. Syl. Pt. 7, [*State v.*] *Miller*, 194 W. Va. 3, 459 S.E.2d 114 [(1995)]." *State v. Jeremy S.*, 243 W. Va. 523, ——, 847 S.E.2d 125, 132 (2020).

The order denying, in part, the motion to dismiss at issue makes absolutely no mention that the circuit court considered or even viewed the video. The order's only references to the factual circumstances giving rise to J.H.'s claims for relief are quoted from the amended complaint. However, during a subsequent hearing on a motion to stay the proceeding pending appeal, it becomes quite clear that the circuit court heavily relied on the video when deciding the motion to dismiss in the context of the qualified immunity issue. The following exchange occurred:

> The Court: All right. All right.
>
> By the way, is any part of the record going to – one of the items that was received by the Court and considered in conjunction with the two previous motions . . . was the – I think it is described as [Officer] Merson's redacted video of the transaction. In other words, I appreciate the heightened pleading standard on [a] Rule 12(b)(6) issue where qualified immunity is obviously going to come into play.
>
> Will the Supreme Court be able to see and understand what the video evidence would show in terms of the particulars of the conduct that's the subject of the dispute?
>
> Mr. Jeffries [counsel for the WVSP]: I was not aware that the [c]ourt considered the video evidence because it is outside of the pleadings in deciding [the motions].

18

The Court: It was in the prior order. Actually[,] I checked mine, and I see that I didn't mention it. It has been provided and was considered as part of the previous [motions].

. . . .

The Court: . . . [O]f course, this was all wrapped up in an effort to acquire custody over an individual who is – you know, I wasn't there, and I'm sure the video tells us a little bit about it, but it doesn't tell us the whole story. The – I am just going off that. Could that serve as a reasonably particular – you know, in other words, we have an unusual opportunity here to know what happened because we actually have a picture of it. And to some degree, we do have some fairly detailed information about what exactly the transaction looked like in real-time.

I realize that doesn't answer all the questions we need to have answered in order to apply the immunity or not. But could that stand instead of a reasonably particularized allegation? In other words, if Mr. Taylor simply appends to the complaint, "See Exhibit A.," and Exhibit A. is the video of the transaction that he complains of, I mean, wouldn't that be sufficient information to let you know what conduct is challenged as being beyond the pale of protection for qualified immunity so that we could start determining whether or not those particular acts are or are not subject to qualified immunity?

Mr. Jeffries: Well, Your Honor, he did [not] append the video to the complaint. The video was a matter outside of the complaint and not proper to be considered at 12(b)(6) stage without converting it to a motion for summary judgment, which it is not.

The Court: Am I required to blind myself to that kind of stuff in order to decide a motion to dismiss?

Mr. Jeffries: I believe you are, Your Honor, with all due respect. You're either required to not consider [it], or convert the motion as one for summary judgment and give the other party a chance to respond to that with evidence of its own.

19

Certainly[,] if the defendants had introduced matters outside of the pleadings, Mr. Taylor would be objecting to that and saying it is not proper in a 12(b)(6) motion, and it is beyond the scope of either the motion to dismiss or the motion to stay. There is authority stating that Plaintiffs also cannot introduce matters outside of the pleadings at [the] 12(b)(6) motion [stage].

Accordingly, it is apparent that the circuit court considered the video of the incident in relation to its decision regarding WVSP's motion to dismiss based upon its assertion of qualified immunity.

The general rule is that "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment[.]" Syl. pt. 3, in part, *Riffle v. C.J. Hughes Constr. Co.*, 226 W. Va. 581, 703 S.E.2d 552 (2010) (quotations and citations omitted). As we previously have explained,

[t]his limit on what can be considered arises from the language of Rule 12(b), which provides that

[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment* and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

W. Va. R. Civ. P. 12(b) (emphasis added).

20

*Riffle*, 226 W. Va. at 587, 703 S.E.2d at 558. As a result, "where a court relies on facts not contained in the pleadings in ruling on a motion to dismiss, it effectively converts such motion to a motion for summary judgment." *Id.*

However, certain exceptions to this general rule have been recognized. For example, materials can be considered without converting to a motion for summary judgment if they were attached to the complaint or incorporated into the complaint by reference. *See Forshey v. Jackson*, 222 W. Va. 743, 747, 671 S.E.2d 748, 752 (2008). There is no indication that the video at issue was either attached to the complaint (or amended complaint) or was incorporated by reference. Indeed, the amended complaint is devoid of any mention of the existence of the dash-cam video.

J.H. argues that the video was not outside the pleadings because it was intrinsic to the allegations in the amended complaint. J.H. fails to cite to any law in support of his contention other than *Harrison v. Davis*, 197 W. Va. 651, 478 S.E.2d 104 (1996). In *Harrison*, the circuit court relied upon information consisting of "statements of the plaintiff's [own] counsel explaining the complaint [during oral argument on the motion to dismiss]." 197 W. Va. at __, 478 S.E.2d at 110. We found that "those statements constituted admissions against the plaintiff[.]" Accordingly, this Court found that conversion into a motion for summary was unnecessary and held in Syllabus point 1 of *Harrison* that,

> [t]he West Virginia Rules of Civil Procedure should be construed liberally to promote justice. Consistent with this liberal approach, a circuit court may look beyond the technical nomenclature of the complaint when ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure to reach the substance of the parties' positions.

As support for the above, we cited to *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) which simply noted that information brought out in a response to a motion to dismiss is "relevant to the extent that [such information] could be proved consistent with the allegations." 194 W. Va. at 776 n. 7, 461 S.E.2d at 522 n. 7 (internal citations and quotations omitted).

We find the facts of this case to be distinguishable from the cases upon which J.H. relies. Initially, we note that the language from *Scott Runyan Pontiac–Buick, Inc.* is from a footnote and as we have said "language in a footnote generally should be considered obiter dicta which, by definition, is language 'unnecessary to the decision in the case and therefore not precedential.' Black's Law Dictionary 1100 (7th ed. 1999)." *State ex rel. Med. Assurance of W. Va., Inc. v. Recht*, 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003). Even more important, from the record we have before us, it does not appear that a hearing was held with respect to any of the filed motions to dismiss. As such, the video could not have been discussed during oral argument on those motions.[20] There was a passing

---

[20] During the August 30, 2019 hearing on the WVSP's motion to stay pending appeal, the circuit court did indicate that counsel for the WVSP was "at a disadvantage . . . because we did have a hearing . . . on [Trooper] Kennedy's motion for

reference to the video in J.H.'s response to the WVSP's motion to dismiss, but it was not attached to the response or discussed in any detail. Moreover, the WVSP had little opportunity to address the video because (1) J.H.'s response was filed only one day prior to the circuit court's issuance of its order and (2) the circuit court, through its order explicitly denied the WVSP the opportunity to file a reply, thereby precluding the opportunity to object to the video. Neither the circuit court's orders denying the Trooper Defendants' respective motions to dismiss nor the order denying the WVSP's motion to dismiss indicate in any way that the court would be relying, even in part, on the video. In fact, as is readily apparent from the hearing on the motion to stay pending appeal, counsel for the WVSP was shocked to discover that the circuit court had watched and considered the video in relation to its motion to dismiss. However, as explained above, the circuit court later indicated that it had in fact considered the video in its decision.

Other courts have examined similar issues regarding when it was appropriate to include a video recording in considering a motion to dismiss. In *Nelson v. Lott*, 330 F. Supp. 3d 1314 (N.D. Ala. 2018), the court found that it was appropriate to consider two items, a video recording of the incident and an autopsy report, not attached to the complaint in ruling on a motion to dismiss. 330 F. Supp. 3d at 1320. The court found that "[e]ven though neither of those evidentiary items are *attached to* plaintiff's Second Amended

---

stay. And it was actually offered, and I was requested to consider it at that point." From this statement, it appears that counsel from the WVSP was not present at that hearing.

23

Complaint, both are clearly referred to therein." *Id.* Specifically, the complaint explicitly referred to the video and quoted from the autopsy report. *Id.* at 1320 n. 7. Similarly, in *Banks v. Huehnerhoff*, No. 2:20-CV-01526-JRC, 2021 WL 37644, at *2 (W.D. Wash. Jan. 5, 2021), the court found that it

> may consider a video recording in connection with a motion to dismiss without converting the matter to summary judgment where . . . the recording is referenced in the complaint and its authenticity is not challenged. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("a court may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions," including a computer disk containing photographs of web pages that was attached to defendant's motion to dismiss); *Garcia v. Doe*, 779 F.3d 84, 87 n.2 (2d Cir. 2014) (considering videos in connection with a motion to dismiss and noting that no party contested the inclusion of the video in the court's review of the complaint), as amended; *King v. Cty. of L.A.*, No. CV1507072SVWAFM, 2017 WL 6885600, at *5 (C.D. Cal. June 6, 2017), report and recommendation adopted, No. CV1507072SVWAFM, 2017 WL 6883915 (Nov. 15, 2017) (considering video referenced in attachment to the complaint).

The facts of this case are rather unique. There is no dispute that the video in question was not attached to the complaint or amended complaint. There is no dispute that the complaint or amended complaint fails to include a statement that the video exists and what it purports to show. Instead, we have a situation where the video at issue was attached to J.H.'s opposition to another defendant's motion to dismiss. The WVSP claims on appeal that it did not even receive a copy of the video when it was served upon the other defendant. Under these particular circumstances, we find that the video was not so intrinsic or integral to the amended complaint that the circuit court could consider it without converting the

24

motion to dismiss into a motion for summary judgment and allow the WVSP the opportunity to respond. Accordingly, we find that the circuit court committed error in this particular matter by considering the video in any respect when deciding the WVSP's motion to dismiss as to the qualified immunity issue.[21] Even though the circuit court erred by considering matters outside the pleadings, we nevertheless also will consider the WVSP's assertion of qualified immunity given that it would provide protection from further proceedings on certain claims in this matter.

---

[21] We acknowledge that we recently in Syllabus point 6 of *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, __ W. Va. __, __S.E.2d __ (2020), held that

> When a movant makes a motion to dismiss a pleading pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and attaches to the motion a document that is outside of the pleading, a court may consider the document only if (1) the pleading implicitly or explicitly refers to the document; (2) the document is integral to the pleading's allegations; and (3) no party questions the authenticity of the document. If a document does not meet these requirements, the circuit court must either expressly disregard the document or treat the motion as one for summary judgment as required by Rule 12(b)(7).

Here, the video was not attached to the motion to dismiss, but rather to a response to another party's motion to dismiss previously filed in the case. Even so, given the guidance from Syllabus point 6 of *Mountaineer Fire & Rescue Equip.*, LLC, as discussed herein, it is apparent that the video did not meet all these requirements.

## B. Qualified Immunity

The WVSP's remaining assignments of error both involve the examination of qualified immunity.[22] Consequently, we will first discuss this Court's general qualified immunity law. Next, we will address each of the WVSP's assertions of qualified immunity raised in this appeal.

1. **Qualified Immunity Standard.** We have held that,

> "[i]n the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).

Syl. pt. 7, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). Furthermore, this Court has held that,

> [t]o the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person

---

[22] While J.H.'s amended complaint is not a model of clarity, it appears that he asserted claims against the WVSP for vicarious liability of the Trooper Defendants' torts, negligent training and supervision, negligent and intentional emotional distress, and violation of several statutory provisions; however, the WVSP's qualified immunity assignments of error in this appeal relate only to the claims of vicarious liability of the Trooper Defendants' torts and negligent training and supervision. The WVSP does not advance any arguments in this appeal as to whether the circuit court erred deferring its ruling on qualified immunity with respect to J.H.'s claim of negligent or intentional infliction of emotional distress or direct violation of several statutory provisions.

26

would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. pt. 11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. Additionally,

[i]f the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee.

Syl. pt. 12, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. With regard to an allegation of whether a clearly established right has been violated,

[a]s this Court has stated and as has been the subject of a plethora of federal jurisprudence on this particular issue:

To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a "particularized showing" that a "reasonable official would understand that what he is doing violated that right" or that "in the light of preexisting law the unlawfulness" of the action was "apparent."

27

> *Anderson v. Creighton*, 483 U.S. 635, 640, 107
> S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).

> *Hutchison v. City of Huntington*, 198 W. Va. 139, 149 n. 11,
> 479 S.E.2d 649, 659 n. 11 (1996).

*A.B.*, 234 W. Va. at 517, 766 S.E.2d at 776.  Moreover, there is one other guiding concept

in assessing if a state agency or official is entitled to qualified immunity:

> Both state and federal law leave "no question that the
> subjective motivations of a police officer are immaterial to a
> determination of whether qualified immunity exists in
> connection with allegations of unreasonable search and
> seizure, unlawful detention, and excessive force." *Robinson*
> [*v. Pack*], 223 W. Va. [828, ]834, 679 S.E.2d [660, ]666[
> (2009).]

*Maston v. Wagner*, 236 W. Va. 488, 501, 781 S.E.2d 936, 949 (2015).

Finally, this Court consistently has found that matters involving qualified

immunity also require a "heightened pleading standard."  *See W. Va. Reg'l Jail & Corr.*

*Facility Auth. v. Estate of Grove*, __ W. Va. __, __, 852 S.E.2d 773, __ (2020)

("Accordingly, we find that the circuit court erred by failing to apply the heightened

pleading standard in this particular matter and reverse its ruling in this regard.").  This

Court previously has stated:

> *We believe that in civil actions where immunities are*
> *implicated, the trial court must insist on heightened pleading*
> *by the plaintiff.  See Schultea v. Wood,* 47 F.3d 1427 (5th Cir.
> 1995) (*en banc*) (a § 1983 action); *see generally Parkulo v.*
> *West Virginia Board of Probation and Parole*, [199 W. Va.
> 161, 483 S.E.2d 507] [(1996)].  To be sure, we recognize the
> label "heightened pleading" for special pleading purposes for
> constitutional or statutory torts involving improper motive has
> always been a misnomer.

28

*Hutchison v. City of Huntington*, 198 W. Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996) (emphasis added). *See also W. Va. Dep't of Educ. v. McGraw*, 239 W. Va. 192, 196 n.5, 800 S.E.2d 230, 234 n.5 (2017) ("In *Hutchison v. City of Huntington*, 198 W. Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996), we stated that when a defendant's answer pleads the defense of governmental immunity, the circuit court should order the plaintiff to file a reply tailored to the defendant's immunity defense. . . . Ms. McGraw's original complaint provided scant detail of the basis of her constitutional tort claim against the DOE, and consequently, she filed two amended complaints in the course of the proceedings before the circuit court. Had the circuit court required Ms. McGraw to file a reply to the DOE's motion to dismiss pleading qualified immunity, it might have assisted an early resolution to this dispute."); *W. Va. Bd. of Educ. v. Croaff*, No. 16-0532, 2017 WL 2172009, at *3 (W. Va. May 17, 2017) (memorandum decision) ("'In civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.' *Hutchison*, 198 W. Va. at 149, 479 S.E.2d at 659."); *Marple*, 236 W. Va. at 660, 783 S.E.2d at 81 ("Furthermore, 'in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.' *Hutchison*, 198 W. Va. at 149, 479 S.E.2d at 659."). We now evaluate J.H.'s claims against these qualified immunity standards.

2.      **Vicarious Liability Claim.** J.H. asserted in his amended complaint that the Trooper Defendants "were acting both within and outside the scope of their duties" when, on November 19, 2018, they "individually and acting together as a mob under color of law,

brutally and severely beat and hit . . . J.H., a minor, in [and] about the head and body, causing him injuries along with bodily damage, pain[,] and suffering." J.H. further alleged that the Trooper Defendants' actions were imputed to the WVSP pursuant to the doctrine of *respondeat superior* and that the WVSP was vicariously liable for the Trooper Defendants' torts. The WVSP responds by arguing that the circuit court erred by refusing to dismiss the vicarious liability claim against it because the circuit court had, in the same proceeding, previously found that J.H. failed to plead sufficient facts to overcome the Trooper Defendants' entitlement to qualified immunity. We agree.

Examining J.H.'s allegation of vicarious liability against the WVSP for the conduct of the Trooper Defendants' actions in light of our qualified immunity standards, we find that, in the instant matter, there has been no assertion of the existence of an insurance contract that waives the defense of qualified immunity. Also, it is undisputed that the WVSP is a State agency that is not within the purview of the Governmental Tort Claims and Insurance Reform Act, and that the individual Trooper Defendants were officers of that State agency.

Accordingly, the next step in the analysis is to determine whether the alleged acts or omissions of the Trooper Defendants were discretionary. *See* Syl. pt. 7, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751. From the face of the amended complaint, which is all that the circuit court and this Court may consider when deciding a Rule 12(b)(6) motion to dismiss, it is unclear, to say the least, exactly

30

what the circumstances were that gave rise to the incident at issue.[23] All we can discern from the four-corners of the amended complaint is that the Troopers were acting under the color of law when they "beat" and "hit" J.H. Despite this lack of important factual background being present in the amended complaint, both parties and the circuit court indicate that the Troopers were conducting an arrest of J.H. at this time. The parties do not appear to dispute that conducting an arrest of an individual is a discretionary function of law enforcement. *See Ex Parte City of Homewood et al.*, 231 So. 3d 1082, 1087 (Ala. 2017) ("[I]n *Hollis v. City of Brighton*, 950 So.2d 300, 309 (Ala. 2006), this Court held that arresting or attempting to arrest an individual is a discretionary function.").

Next, we must move forward in the qualified immunity analysis and determine whether J.H. has alleged that the acts of the Trooper Defendants were in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive. *See* Syl. pt. 11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. With respect to the vicarious liability averment, the totality of J.H.'s claim alleged in his amended complaint is as follows. On November 19, 2018, the Trooper Defendants were members of the WVSP; they were assigned to the Eastern Panhandle area of West Virginia; and they were on active duty at

---

[23] We observe that J.H. filed an amended complaint, and that even the amended complaint is barebones and a mere four pages with sparse facts alleged. There are no facts asserted in the complaint explaining in even a skeletal way what the circumstances were of the interactions of the Trooper Defendants and J.H., or even, at the very least what injuries J.H. allegedly sustained as a result of these interactions.

31

the time and place of the subject incident. Additionally, on that same date, the Trooper Defendants "acting both within and outside the scope of their duties" "brutally and severely beat and hit the Plaintiff, J.H., a minor, in [and] about the head and body, causing him injuries along with bodily damage, pain and suffering." J.H. then alleged, that these actions "were imputed" to the WVSP under the doctrines of *respondeat superior* and vicarious liability.

J.H.'s amended complaint is devoid of any explicit naming of a specific cause of action as to the Trooper Defendant's conduct at issue. Nevertheless, the circuit court found that the allegations of the complaint were sufficient to find a cause of action for civil battery.[24] As such, because we have allegations of a battery occurring during an apparent arrest by law enforcement officers, the necessary implication is that the arresting

---

[24] We have construed civil battery as follows:

> The Restatement (Second) of Torts, § 13(a) and (b) (1965), states that: "[a]n actor is subject to liability to another for battery if (a) he acts *intending* to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." (Emphasis added.).

*Funeral Servs. by Gregory, Inc. v. Bluefield Cmty. Hosp.*, 186 W. Va. 424, 427, 413 S.E.2d 79, 82 (1991), *overruled on other grounds by Courtney v. Courtney*, 190 W. Va. 126, 437 S.E.2d 436 (1993).

officers, here the Trooper Defendants, used excessive force to effectuate the arrest.[25] This

Court previously has found that, in the context of qualified immunity,

> [a]n objective reasonableness standard is used to assess whether an officer's actions are excessive, that is, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *City of Saint Albans v. Botkins*, 228 W. Va. 393, 399 n. 16, 719 S.E.2d 863, 869 n. 16 (2011) (quoting *Graham* [*v. Conner*], 490 U.S. [386,] 397, 109 S. Ct. 1865[, 1872, 104 L. Ed. 2d 443 (1989)]).

*Maston*, 236 W. Va. at 504, 781 S.E.2d at 952. Furthermore,

> [a]s the U.S. Supreme Court recognized in *Graham v. Connor*, '[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' 490 U.S. at 396, 109 S. Ct. 1865.

---

[25] *See D.C. v. Chinn*, 839 A.2d 701, 707 (D.C. 2003) ("Therefore, where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with the privilege having ended at the point where excessive force began."); *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996) ("Traditionally, a presumption of good faith attaches to an officer's use of force in making a lawful arrest[,] and an officer is liable for damages only where the force used is clearly excessive. If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." (internal citations omitted)); *Alley v. Bettencourt*, 730 N.E.2d 1067, 1073-74 (Ohio App. 3d 1999) ("Officers are privileged to commit battery when making a lawful arrest, but the privilege is negated by the use of excessive force. *Edwards v. Philadelphia* (C.A.3, 1988), 860 F.2d 568, 572. If, under the totality of the circumstances, an officer unreasonably seizes a person by using excessive force, he violates that person's Fourth Amendment rights. *Frigo v. Guerra* (D.Ill.1994), 860 F. Supp. 524, 531. The reasonableness of force is measured by the facts and circumstances of each particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor* (1989), 490 U.S. 386, 396, 109 S. Ct. 1865, 1871-1872, 104 L. Ed. 2d 443, 455-456.").

*City of Saint Albans v. Botkins*, 228 W. Va. 393, 402, 719 S.E.2d 863, 872 (2011).

In its orders regarding the respective motions to dismiss filed by the Trooper Defendants, the circuit court, despite denying the motions to dismiss, explicitly found that "[b]ased solely on the amended complaint, . . . there is an absence of well-pleaded facts to allow the court to determine whether the physical actions visited upon J.H. was objectively reasonable force to effect an arrest or a gratuitous infliction of pain on a recalcitrant prisoner." The circuit court further found that

> [i]n a case where a defendant may be entitled to qualified immunity, the Plaintiff is burdened to allege specific facts which would justify a finding that the government official knew or reasonably should have known that his actions violated clearly established law. An allegation of injury during the course of an arrest is not sufficient to particularly plead facts overcoming the immunity asserted by the [defendants].

There were neither any supporting factual allegations that described what led to the arrest of J.H., nor were there any supporting factual allegations that described what occurred during the arrest, for example whether J.H. was combative or cooperated with the law enforcement officials, whether weapons were involved, or whether other individuals were present at the scene of the incident. Simply put, an officer effectuating an arrest may, depending on the circumstances, use some level of force in doing so. In order to determine whether qualified immunity shields the officers or, through vicariously liability, the employer, the circumstances must be known. Because J.H. failed to sufficiently plead allegations that, if taken as true, would demonstrate that the actions taken by the Trooper

34

Defendants were objectively unreasonable, it is clear that J.H. failed to identify in his amended complaint any clearly established constitutional or statutory law[26] or right that the Trooper Defendants' actions or omissions violated and that J.H. alleges are, in turn, imputed to the WVSP.[27] Consequently, the circuit court erred in failing to determine that the WVSP was entitled to qualified immunity as to J.H.'s vicarious liability claim.

3.  **Negligent Training and Supervision Claim.**   Finally, we examine J.H.'s negligent training and supervision claim.  The WVSP contends that the circuit court erred by refusing to dismiss the negligent training and supervision claim against it because J.H. failed to identify any clearly established law that the WVSP violated in training and supervising the Trooper Defendants.  We agree with the WVSP.

---

[26] To the extent that it could be argued that the Trooper Defendants' alleged statutory violations are also imputed to the WVSP and sufficient to overcome the WVSP's claim of qualified immunity, for the same reasons as described herein, J.H. has failed to sufficiently plead facts that if taken as true would demonstrate a violation of a clearly established law as to those statutory provisions.  Additionally, to the extent that J.H. pled that the Trooper Defendants' negligent and/or reckless acts were malicious and imputed to the WVSP and sufficient to overcome qualified immunity, again for the reasons described herein, J.H. has failed to sufficiently plead facts that if taken as true would demonstrate malicious conduct on the part of the Trooper Defendants.

[27] We note that this Court "'takes the pleadings and record as it finds them[,] and the adversarial process makes it incumbent on the parties to plead the causes of action and present the requisite evidence necessary to maintain viability of their case.' *A.B.*, 234 W. Va. at 516, 766 S.E.2d at 775." *W. Va. Bd. of Educ. v. Croaff*, No. 16-0532, 2017 WL 2172009, at *6 (W. Va. May 17, 2017) (memorandum decision).

Once again, using the qualified immunity standards discussed above, the first step in the present inquiry is to determine whether the alleged acts or omissions of the WVSP were discretionary.[28] *See* Syl. pt. 7, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. Essentially, J.H. claims that the WVSP was negligent in its training and supervision of the Trooper Defendants in several ways, such as failing to properly train, failing to discipline previous employees, failing to prevent the execution of any policy or agreement for its members not to beat up arrestees, and failing to exercise field supervision. Additionally, J.H. contends that the WVSP was negligent in "other manners in its operation and control." It is well-established that "the broad categories of training, supervision, and employee retention . . . easily fall within the category of 'discretionary' governmental functions." *A.B.* at 514, 766 S.E.2d at 773.

Because we have determined these to be discretionary functions we must go to the next step in the qualified immunity analysis and determine whether J.H. has alleged that such acts or omissions of the WVSP are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive. *See* Syl. pt. 11, *A.B.*, 234 W. Va. 492, 766 S.E.2d 751. The pivotal question is whether J.H. alleged that the WVSP, in training and

_____

[28] As previously observed, there are no allegations that the WVSP falls within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code section 29-12A-1 et seq. Additionally, there are no allegations in this matter that the WVSP waived its immunity.

36

supervising the Trooper Defendants, violated a clearly established right or law and/or otherwise acted maliciously, fraudulently, or oppressively. *See, e.g.*, *R.Q. v. W. Va. Div. of Corr.*, No. 13-1223, 2015 WL 1741635, at *5 (W. Va. Apr. 10, 2015) (memorandum decision) ("There does not appear to be a question in the instant case that D.F. allegedly violated petitioner's clearly established rights, but it is not his conduct that is the focus of this aspect of the appeal. Instead, the question is whether there is an assertion that the DOC, in the course of its supervision and retention of D.F., violated a clearly established right. Petitioner failed to allege what the DOC did or failed to do that it would have reasonably understood was unlawful with regard to its supervision, retention, and training of D.F. Petitioner did not identify a single policy, procedure, rule, regulation, or statute that the DOC violated."). With respect to the negligent training and supervision claim, J.H. failed to identify in either his complaint or amended complaint any clearly established constitutional or statutory law or right that was violated. Furthermore, J.H. failed to plead that the WVSP acted maliciously, fraudulently, or oppressively in training or supervising the Trooper Defendants. Accordingly, the circuit court erred in failing to determine that the WVSP was entitled to qualified immunity as to J.H.'s negligent training and supervision claim.[29]

---

[29] We recognize that in *Doe v. Logan County Board of Education*, 242 W. Va. 45, 829 S.E.2d 45 (2019), we reversed a circuit court's order dismissing a matter for failure to state a claim. 242 W. Va. at 50, 829 S.E.2d at 50. While admitting that the complaint was "not a model of jurisprudential craftsmanship[,]" we nevertheless found that it did indeed contain "some factual allegations to support aspects of the alleged negligence." *Id.* Accordingly, given that there were some allegations, "both factual and legal, that are included in [the c]omplaint," we concluded that rather than wholly dismissing the complaint with prejudice, the circuit court should have first allowed the plaintiff the

## IV.

## CONCLUSION

For the foregoing reasons, we find that the circuit court erred by improperly considering material outside the pleadings in denying the WVSP's motion to dismiss, and further erred by failing to grant the WVSP's motion to dismiss the claims of vicarious liability and negligent training and supervision due to J.H.'s failure to plead in his complaint sufficient facts to overcome the WVSP's assertion of qualified immunity as to those claims. Therefore, we reverse the July 26, 2019 order of the Circuit Court of Berkeley County and remand this case for entry an order dismissing the vicarious liability and negligent training and supervision claims against the WVSP and for further proceedings consistent with this opinion.

Reversed and remanded.

---

opportunity to provide a more heightened pleading pursuant to *Hutchison v. City of Huntington*, 198 W. Va. 139, 149-50, 479 S.E.2d 649, 659-60 (1996). *Doe*, 242 W. Va. at 51, 829 S.E.2d at 51.

    The matter *sub judice* is distinguishable from *Doe* because, here, the complaint aside from the assertion that the Trooper Defendants were employed by the WVSP and the one sentence that provides that the Trooper Defendants "brutally and severely beat and hit" J.H., there are simply no other factual allegations to support J.H.'s complaint. The present matter is more akin to *B.R. v. West Virginia Department of Health & Human Resources*, No. 17-0564, 2018 WL 2192480, at *4 (W. Va. May 14, 2018) (memorandum decision), where this Court affirmed the circuit court's order granting a motion to dismiss because petitioner failed to set forth with sufficient particularity any specific law that was allegedly violated.